Head v. Martin.

---

CASE 60—PETITION ORDINARY—MARCH 31.

# Head v. Martin.

### APPEAL FROM OLDHAM CIRCUIT COURT.

1. ARREST.—An officer in making an arrest for a felony, or in retaking a felon who has escaped, may use such force as is necessary to capture the felon, even to killing him when in flight. In the case of an arrest for a misdemeanor, however, the rule is different. It is the officer's duty to make the arrest; he may summon a *posse*, and may defend himself, if resisted, even to the taking of life; but when the offender is not resisting, but fleeing, the officer has no right to kill or shoot and wound.

2. SAME.—A bastardy proceeding is, under our law, a civil one, yet it proceeds in the name of the Commonwealth, and under the statute the offender is subject to arrest. Therefore, so far as regards the rights of an officer in making an arrest under a bastardy warrant, the offense is to be regarded as a misdemeanor.

   The defendant in a bastardy warrant who had been arrested under the warrant by a deputy sheriff, was shot and wounded by the deputy when fleeing from his custody. In this action for the tort, *Held*— That the deputy is liable.

CARROLL & BARBOUR FOR APPELLANT.

1. Appellant's attempt to arrest appellee was in the manner provided by law. (Criminal Code, secs. 42, 43; Sharswood's Blackstone, 3d book, p. 288.)

Head v. Martin.

2. The officer had the right to use such means as were necessary to make the arrest. (Fleetwood v. Commonwealth, 80 Ky. 2; Wharton on Criminal Law, sec. 1260.)

Whether the means used were *necessary*, was a question of fact which should have been left to the jury. (2 Wharton on Crim. Law, sec. 1259.)

3. Even if the answer be construed as alleging that appellee had been arrested, and that he was shot to prevent his escape, appellant was, under the circumstances, justifiable. (2 Wharton's Crim. Law, sec. 2615; Blackstone, Book 4, p. 131; Criminal Code, sec. 44.)

An officer is liable for the escape of a prisoner from his custody, unless caused by act of God or the public enemy. (Gen. Stats., p. 404; 3 Blackstone, 415; Bouvier's Law Dict., title Escape; Alsept v. Eyles, 2 H. Bl., 108; Elliott v. Norfolk, 4 T. R., 789; Nicholl v. Durley, 2 Y. & J., 399; Jacob's Fisher's Digest, title Escape, pp., 4684-4685.)

Therefore, he should have, and has, the right to use such force as may be necessary to recapture the prisoner when he attempts to escape.

BEN. S. ROBBINS ON SAME SIDE.

1. At common law an officer had the right to use force in preventing the *escape* of a prisoner in his custody, and if necessary to take his life, although the charge against him was a mere misdemeanor. But the common law has nothing to do with the question at issue in this case. Our statutes prescribe the powers and duties of an officer in making arrests, and as they are full and complete they must be regarded as all the law on the subject. (Gen. Stats., chap. 7, sec. 3; Criminal Code, secs. 36, 39, 42, 43 and 44.)

2. As the statute provides that "no unnecessary force or violence shall be used in making the arrest" (Criminal Code, sec. 43), by necessary implication just such force and violence as are necessary may be used. (Fleetwood v. Commonwealth, 80 Ky., 1.)

3. The Criminal Code of Practice ignores the common law distinction between the rights of an officer in arresting a felon and his rights when arresting a person charged with a misdemeanor.

4. The question whether more force than was *necessary* was used should have been submitted to the jury.

IRA JULIAN FOR APPELLEE.

1. There is no statute in this State which prescribes the powers and duties of a peace officer *as to the force to be used* in making an arrest, or recapturing a prisoner after escape, and therefore the question must be determined by the rules of the common law.

vol. 85—31.

2. A bastardy proceeding is neither a criminal nor a penal prosecution, but is essentially a civil proceeding. (3 Mon., 213; 6 J. J. Mar., 585; 3 Bush, 6.)

3. While in felony cases the officer may use such force as may be necessary to capture the prisoner, even to killing him *while in flight*, the same severe rule does not apply in cases of arrests for misdemeanors; and in such cases the officer has no right, when the prisoner is not resisting, but fleeing, to shoot and wound, which would imply the right to kill. (Bishop on Crim. Law, vol. 2, p. 355, secs. 662 and 663; Hale's Pleas of the Crown, vol. 1, p. 481; Foster's Crown Law, 271; Wharton on Crim. Law, sec. 1032; Wharton on Homicide, sec. 213.)

4. The case of a defendant flying after an arrest actually made is governed by the same rules as where the party flies to avoid an arrest. (Bishop on Crim. Law, vol. 2, sec. 664; Wharton on Homicide, secs. 212-214.)

5. The cases of Fleetwood v. Commonwealth, 80 Ky. 1, and Moccabee v. Commonwealth 78 Ky., have no application to this case.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The single question presented is, whether a peace officer may, in order to arrest one upon a warrant for bastardy, or to prevent his escape after arrest, kill him *when fleeing*. If he has the right under such circumstances to shoot and wound him, as was done in this instance, then it necessarily follows that he can not be held responsible if it results in death.

It is attempted to draw a distinction between a case where one is attempting to avoid arrest, and where one is endeavoring to escape after arrest. If, however, the offender is *in flight*, and is not at the time resisting the officer, then the law is the same, whether he be fleeing to avoid arrest or to escape from custody. (2 Bishop on Criminal Law, section 664; Wharton on Homicide, sections 212-214.) The averments of the answer, admitted by the demurrer, show that the appellee, Martin, had in fact been arrested by the appellant, Head, as deputy sheriff, and was shot by the

latter *when fleeing* from his custody; but the fact that an arrest had been made does not alter the law of the case.

A bastardy proceeding is, under our law, a civil one. Yet it proceeds in the name of the Commonwealth, and under the statute the offender is subject to arrest. As to the question now before us, it is, therefore, to be regarded in the same light as a misdemeanor.

Our statute is silent, unless it may be regarded as speaking by implication, as to the force an officer may use in effecting an arrest, or in recapturing a prisoner. It merely provides, that "no unnecessary force or violence shall be used in making the arrest."

We, therefore, turn to the common law for guidance. By it an officer in a case of *felony* may use such force as is necessary to capture the felon, even to killing him when in flight. In the case of *a misdemeanor*, however, the rule is different. It is his duty to make the arrest; he may summon a *posse*, and may defend himself, if resisted, even to the taking of life; but when the offender is not resisting, but fleeing, he has no right to kill. Human life is too sacred to admit of a more severe rule. Officers of the law are properly clothed with its sanctity; they represent its majesty, and must be properly protected; but to permit the life of one charged with a mere misdemeanor to be taken when fleeing from the officer would, aside from its inhumanity, be productive of more abuse than good. The law need not go unenforced. The officer can summon his *posse*, and take the offender.

The reason for this distinction is obvious.  The se-
curity of person and .property is not endangered by
a petty offender being at large, as in the case of a
felon.  The very being of- society and government
requires the speedy arrest and punishment of the
latter.

Bishop says:  "The justification of homicide hap-
pening in the arrest of persons charged with misde-
meanors, or breaches of the peace, is subject to a
different rule from that which we have been laying
down in respect to cases of felony;  for, generally
speaking, in misdemeanors it will be murder to kill
the party accused for flying from the arrest, though
he can not otherwise be overtaken, and though there
be a warrant to apprehend him;  but under circum-
stances, it may amount only to manslaughter, if it
appear that death was not intended.   *   *   *   *

"But in misdemeanors and breaches of the peace,
as well as in cases of felony, if the officer meet with
resistance and the offender is killed in the struggle,
the killing will be justified."   (2 Bishop on Criminal
Law, sections 662-3.)

The same rule may be found in the works of the
other common law writers.

Hale says:  "And here is the difference between civil
actions and felonies.  If a man be in danger of arrest
by a *capias* in debt or trespass and he flies, and the
bailiff kills him, it is murder;  but if a felon flies,
and he can not be otherwise taken, if he be killed it
is no felony, and in that case the officer so killing for-
feits nothing, but the person so assaulted and killed
forfeits his goods."   (1 Hale's Pleas of the Crown,
page 481.)

Head v. Martin.

So great, however, is the law's regard for human life, that if even a felon can be taken without the taking of life, and he be slain, it is at least manslaughter. Even as to him, it can be done only of necessity.

An officer in arresting or preventing an escape for a misdemeanor may oppose force to force, and sufficient to overcome it, even to the taking of life. If the offender puts the life of the officer in jeopardy, the latter may *se defendendo* slay him; but he must not use any greater force than is reasonably and apparently necessary for his protection.

It is often said, that an officer may use such force as is necessary to make an arrest. Generally speaking, this is true. It was so said in the cases of Fleetwood v. Commonwealth, 80 Ky., 1, and Moccabee v. Commonwealth, 78 Ky., 380. But in those cases a deadly affray between parties was in progress or about to occur, endangering the lives not only of the participants, but innocent persons; and it was the duty of the officer, when resisted, to quell it even at the sacrifice of human life. In these cases he was justified in killing, not only *se defendendo*, but to prevent the impending commission of a felony.

In case, however, of a mere riot upon one day, and an attempted arrest upon the next, surely the officer would not be justified in killing the offender when fleeing from custody or to escape arrest. A person commits a misdemeanor by the use of profane language; he flees from the officer attempting to arrest him or from custody. The dictates of humanity as well as the legal rule forbid the taking of his life under such circumstances.

The officer must in such a case summon his *posse*, and take him. He has no more right to kill him than he would have if the offender were to lie down and refuse to go with him.

It is said, however, that the appellee was in the wrong; that there was a sort of contributory neglect upon his part which produced the injury. It was not, however, such neglect or conduct as, under ordinary circumstances, would produce the injury. It could not be expected that, in consequence of it, the officer would go beyond the limit of the law, and employ force when and of a character forbidden by it. It is not a question whether unnecessary force was used; but the answer of the appellant shows that he used it when and in a degree forbidden by the law.

The demurrer was, therefore, properly sustained, and the judgment must be affirmed.