CASE 34—ACTION ON SHERIFF'S OFFICIAL BOND FOR NEGLIGENT KILLING OF PLAINTIFF'S INTESTATE—JUNE 14.

# Johnson, &c., v. Williams' Admr.

APPEAL FROM HICKMAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. AFFIRMED.

PUBLIC OFFICERS—LIABILITY OF PEACE OFFICER FOR KILLING INNOCENT PERSON UNDER MISTAKE—LIABILITY OF SHERIFF FOR ACTS OF DEPUTY—PUNITIVE DAMAGES—HARMLESS ERROR.

Held:　1. A peace officer can not escape liability for damages for killing another, though he may have believed, and had reasonable ground to believe, that the person killed was the defendant in a warrant of arrest charging a felony, and that the killing was necessary to prevent him from escaping arrest, as it

| 111 | 289 |
| 113 | 908 |
| 111 | 289 |
| f126 | 125 |
| 126 | 128 |
| 111 | 289 |
| e136 | 806 |

was his duty to know with certainty that the person he was attempting to kill was the person he was authorized to arrest.

2. Under Kentucky Statutes, section 4141, providing that in all cases the sheriff shall be liable on his bond for any misconduct or default of his deputies, a sheriff is liable on his bond for the act of his deputy in killing another whom the deputy erroneously supposed to be the defendant in a warrant of arrest, and to be attempting to escape arrest, though he may have had a reasonable ground for his belief.

3. Punitive damages can not be recovered in an action on an official bond, as the covenants of the bond bind the sureties only for compensation.

4. The error in authorizing the jury to award punitive damages in an action for causing a death was harmless, where the decedent was a young man in good health and the verdict was for only $2,500; it being manifest that the jury did not give punitive damages.

J. C. FLOURNOY, ATTORNEY FOR APPELLANTS. (ROBERTSON & THOMAS AND R. T. TYLER, OF COUNSEL.)

That Charlie Williams was killed by the two deputies is admitted. The killing took place about midnight of February 5, 1897, on a public road in Fulton county while the deputies were in pursuit of Dave Browder, an escaped murderer. Owing to the fact that decedent's voice resembled Browder's and that he was coming from the direction that Browder had gone; that he was leading a white horse such as Browder was last seen riding, and as he did not halt when commanded to by the officers, but increased his speed in an apparent attempt to escape, he was fired upon and killed.

A trial has resulted in a verdict of $2,500 against the sheriff and his bondsmen and a reversal is asked.

We contend that upon these *undisputed* facts the deputies had probable cause to believe that Williams was Browder, and it was their duty to arrest him, and it was error in the court to submit to the jury the question of probable cause where the facts of the killing are undisputed. In such case the question of probable cause is a question of law for the court, and not for the jury.

We contend that instruction No. 1 is objectionable because it singles out and gives undue prominence to certain parts of the evidence which relates to "the health, age, probable length of life, mental and physical abilities and opportunities of decedent,"

and especially is the instruction manifestly wrong in authorizing the jury to give *punitive damages*.

Punitive damages can not be given in a suit upon a sheriff's bond against him and his sureties for the alleged wrongful and negligent acts of his deputies. There is no process of reasoning that will support a rule which punishes the sureties of an officer for the wrong doing of his agents unless perhaps in cases where he has been grossly careless in employing incompetent men. In this case the evidence shows that the deputies were discreet, careful officers.

We also contend that the court erred in his instructions given, defining "negligence" to the prejudice of the appellant.

### AUTHORITIES CITED.

Am. & Eng. Ency. (vol. 7), 662; Sedgwick on Damages (8th ed.), vol. 1, secs. 456, 370, and 378; Faris v. Starke, 3 B. Mon., 3; Rives v. Woods, 12 Ky. Law Rep., 692; Meyer v. L., St. L. & T. R. R. Co., 17 Ky. Law Rep., 945; Alexander v. Reid, 19 Ky. Law Rep., 1636; Creighton v. Com., 7 Ky. Law Rep., 70; People v. Kelvington, 43 Am. St. Rep., 70; C. & O. R. R. Co. v. Lang's Admr., 19 Ky. Law Rep., 65; L. & N. R. R. Co. v. Eakin's Admr., 20 Ky. Law Rep., 736;; Same v. Kelly's Admr., 19 Ky. Law Rep., 69; Jewel v. Mills, 3 Bush, 62; Petit v. Owens, 8 B. M., 51; L. & N. R. R. Co. v. McCoy, 81 Ky, 413.

JOHN W. RAY, for APPELLEE.

### POINTS DISCUSSED.

The instructions are not a part of the record. The bill of exceptions as signed by the court certifies, "and this was all the evidence and exceptions offered or heard on the trial of this cause." It contains no record of any objection or exception to any instruction given or refused. An objection to an instruction made for the first time in this court will not be heard. Johnson v. Postal Tel. Co., 50 S. W., 1; L. & N. R. R. v. Peltier, 45 S. W., 518 and cases cited; Jewel v. Mills, 3 Bush, 62.

SHELBOURNE & KANE, for APPELLEE.

At the time the deputies killed the deceased they were acting in their official capacity. This is conceded. In the performance of an official act one is always held to at least the ordinary rule of performing it in a careful and prudent way. We beg to submit to the court that the proof shows that these deputies were highly careless and negligent in the performance

of the duty they undertook on this occasion. And the jury has so found.

### AUTHORITIES CITED.

Brown v. Weaver, Am. St. Rep., 512 and notes; Thomas v. Kinkead, 29 Am. St. Rep., 68 (55 Ark., 502); Yount v. Carney, 91 Iowa, 564; Dishneau v. Newton, 91 Wis., 201; Warren v. Boyd, 120 N. C., 60; State v. Wolford, 11 Ind. App., 392; Lammon v. Feusier, 111 U. S., 17; Spencer v. Moore, 2 Dev. & B., 264; State v. Moore, 19 Mo., 369; Mechem on Public Officers, S., 789; Murfree on Sheriffs, sec. 60; Smith on Sheriffs, sec. 21; West v. Cabell, 153 U. S., 85, Holding Sureties Liable; Norwalk v. Ireland, 68 Conn., 7, Holding Sureties of Constable Liable; Norris v. Mersereau. 74 Mich., 689; Walter v. Jacobson, 7 N. Dak., 43; Bishop v. McGillis, 80 Wis., 581; Jefferson v. Hartley, 81 Ga., 719, Strong Case; Crocker on Sheriffs.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—AFFIRMING.

This action was instituted by the appellee against the appellant, T. H. Johnson, sheriff, and the sureties in his bond, for the alleged negligent killing of the intestate, Charles Williams, by two of his deputies. Dave Browder murdered a negro. Ernest Johnson and H. C. Judge were deputies under Johnson, and were sent to arrest him for the crime which he had committed. They went to Casye, a small village, where Browder seems to have lived, with the view of accomplishing his arrest. It was there ascertained that he had gone to Moscow, a near-by village, to see his father, as he said he would not surrender until he had a consultation with him. It was thought probable that he would return to Casye. So the parties started in the nighttime, with the view of apprehending him. Johnson and Judge went to a point where the Moscow road crosses another one. Shortly after reaching that crossing two men were discovered approaching in a buggy, leading behind them a gray horse. The deputies had been informed that Browder was riding a gray horse, and they also claim that they thought they recognized the voice of

one of the parties as being his. The deputies claim they halted them as they approached, and, instead of stopping the speed of the horse, they increased it, and after the buggy had passed them they fired, with the intention of preventing Browder's escape. It turned out that he was not in the buggy, but a young man by the name of Campbell, and with him was Charles Williams. One shot took effect in Williams' head, from which he shortly thereafter died. Campbell testified that as soon as the deputy sheriffs cried "Halt" he hollowed "Whoa" to his mare, and about that time the deputies began to fire on them. There is also some testimony tending to show that the ball which killed Williams entered his forehead. The whole defense is based upon the idea that the deputy sheriffs had the right, if it was necessary to do so to prevent Browder's escape, to kill him; that, as they had probable cause for believing that he was one of the occupants of the buggy, they therefore had the right to shoot, and, if in doing so they killed Williams, there is no more liability than there would have been had Browder been killed. The case was tried, at the instance of the defendants, upon the theory that they had the right to kill Browder under the circumstances detailed by them, and that there is no more liability created for the killing of Williams than there would have been had they killed Browder. It is not denied that the deputies were acting *virtute officii*, as the defendants sought to escape liability upon the grounds that they were so acting, and that they had acted properly. It is not claimed that the killing was *colore officii*. In the court below both the plaintiff and defendants endeavored to try, and did try, the case upon the theory that an officer has the right to shoot one charged with felony, to prevent his escape.

The opinions of courts and the writers upon criminal law recognize the rule to be that an officer has the right to shoot one charged with a felony, to prevent him from escaping. It was so held by this court in Head v. Martin, 85 Ky., 480 (9 R., 45) (3 S. W., 622). But we do not decide whether or not the deputies would have been authorized, in law, to have shot Browder, had he been in the buggy, attempting to prevent arrest by fleeing. Whether fleeing under such circumstances is such an escape, in the meaning of the law, as would authorize officers who have a warrant of arrest for one on a charge of felony to shoot him, we do not decide. Courts recognize the rule to be that if a process is put in the hands of an officer to execute against B., and he seizes the goods of A. under it, he is liable on his official bond to A. for damages. Town of Norwalk v. Ireland, 68 Conn., 1 (35 Atl., 804); Norris v. Mersereau, 74 Mich., 689 (42 N. W., 153); Welter v. Jacobson, 7 N. D., 32 (73 N. W., 65). It was held in Lammon v. Feusier, 111 U. S., 17 (4 Sup. Ct., 286), (28 L. Ed., 337), that the taking by a marshal of the United States, upon a writ of attachment against one person, of the goods of another, is a breach of the condition of his official bond, for which his sureties are liable. It has been held that an illegal arrest is a breach of a bond to faithfully and without oppression discharge all duties required by law. Yount v. Carney, 91 Iowa, 559 (60 N. W., 114). It was held in West v. Cabell, 153 U. S., 78 (14 Sup. Ct., 752), (38 L. Ed., 643), that a warrant to arrest James West for murder will not authorize the marshal to arrest Vandy M. West, and for the arrest and imprisonment of the latter on such warrant by one of his deputies the marshal and his sureties are liable upon his official bond. Murfree, Sher., sec. 60, says: "On the common-law principles governing the ordinary relations of principal

and agent, a sheriff would not be responsible for an act done by his deputy *colore officii*; but it is held in Virginia and West Virginia that on principles of public policy, applying to the relation of a sheriff and his deputy, the former is liable in such a case; and, on the same principle, it would seem that he and his sureties are liable on his official bond. In a Massachusetts case (Knowlton v. Bartlett, 1 Pick., 273) the court says: 'If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable. If it was not an official, but a personal, act, it is equally clear that he is not answerable. But an official act does not mean what a deputy might lawfully do in the execution of his office. If so, no action could ever lie against the sheriff for the misconduct of his deputy. It means, therefore, whatever is done under color or by virtue of his office.' To hold the deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy should be acting under color of some writ, but if he is acting under color of his office, and professing so to act, and inducing others interested to believe he is acting *colore officii*, he and his sureties will be bound by such acts. No other rule would be safe. Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office. And, if the sheriff and his sureties are bound for such acts of the deputy while acting under color of his office, then the deputy and his sureties are liable to the sheriff for his act." In Brown v. Weaver, 76 Miss., 7 (23 South., 388), it was held that an officer had no right to shoot a misdemeanant to prevent his escape, and that if he was unjustifiably shot by a deputy sheriff in attempting to arrest him under

a warrant, or in attempting to prevent his escape after arrest, he can maintain an action for damages on the official bond of the deputy's principal. In Head v. Martin the court held that an officer had no right to shoot one charged with a misdemeanor, while escaping. It does not appear from the opinion what was the purpose of the action, but, as it was not a criminal prosecution, it must have been an action for damages. This court, in Shields v. Pflanz, 19 Kentucky Law Rep., 648 (41 S. W., 267), held that a sheriff was responsible for the mistreatment of the prisoner by his deputy while conveying him from one county to another.

The covenants of the sheriff's bond required him to faithfully discharge the duties of his office. This imposes the duty of executing the processes which the law authorizes to be issued and placed in his hands, and to make arrests in the manner and upon the conditions imposed by law. If he attempts to make an arrest, and in doing so inflicts an injury in violation of law upon the party sought to be arrested, or upon another, then he and his sureties are liable for the damages sustained. If the sheriff, in executing an order of attachment against the property of one person, seizes that of another, he and his sureties are liable. If he should seize the property of one not a defendant in the execution, and sell it to satisfy it, he is liable on his bond for the tort. If he has a warrant against one, and under it arrests another, he is liable on his bond for the tort thus committed. He can not justify the wrongful arrest by showing he believed, and had reasonable grounds for believing, that he was executing it upon the party named in it. If he can not in that way justify a wrongful arrest, much less should he be permitted to justify the killing of another by showing that he had

probable cause for believing that he was shooting at the
party whom he was authorized to arrest.   The law which
gives an officer the right to kill an escaping felon certainly
requires him to know that he is the felon, not an innocent
party, whose life he is attempting to take.   The question
here is quite a different one from what we would have if
the deputy sheriffs had shot at Browder while escaping,
and killed Williams.    In the latter case they would have
been shooting at the right man, if the facts justified it, but
here they shot at and killed an innocent man.  While they
did an unlawful act, still they were acting in their official
capacity.   They had the authority as deputy sheriffs to
arrest Browder, but in the exercise of that authority they
acted improperly, abusing the confidence which the law
imposed in them.   They were guilty of misconduct in office,
for which their principal and his sureties are liable; for
sec. 4141, Kentucky Statutes, provides: "The sheriff may,
with the approval of the county court, appoint one or more
deputies, and take bond to himself for the faithful dis-
charge of his duties of such deputies; but in all cases the
sheriff shall be liable on his bond or bonds for any mis-
conduct or default of such deputies; any deputy may be
removed at any time by the sheriff."

The instructions which the court gave were more favor-
able to the defendants than they were entitled to have
given to the jury, except the one on the measure of dam-
ages.   The part of the instruction giving the measure of
compensatory damages is substantially correct, but the in-
struction also authorized the jury to award punitive dam-
ages.   Punitive damages might have been awarded against
the deputies who killed the decedent, but it is not proper
that they should be given against the sheriff and the
sureties in his official bond.   The covenants of the bond

do not require the sureties to do more than compensate an injured party for the actual damages which he may have sustained by reason of the misconduct of the sheriff or his deputies. Its covenants do not require them to pay a sum of money which is inflicted by way of punishment. They have committed no wrong, and therefore the reason of the law which allows exemplary damages against wrong-doers can not make it apply to them. In fact, the reasons which allow a recovery of exemplary damages would forbid their assessment against sureties in the official bond. This is an action upon contract. Usually exemplary damages are allowed only in actions of tort. It has been held in some cases that where the condition of the bond given in pursuance of the statute is broken by the commission of a tort, such as would be a proper cause for exemplary damages, such damages may be recovered in the action on the bond. But it is stated in Sedg. Meas. Dam., sec. 370, that "this is contrary, however, to the current of authority, which is to the effect that only compensatory damages can be recovered in an action on a statutory bond." While the court should not have given an instruction awarding exemplary damages, still the verdict was only $2,500. Considering the evidence as to the age and health of the young man who was killed, the jury could not have included in their verdict any exemplary damages. The judgment is affirmed.

Judge Burnam dissents.

In my opinion, the act of the deputies in killing decedent was not in discharge of an official duty; hence the securities on the sheriff's bond can not be made liable under the facts of this case, and I therefore dissent from this opinion.