## DURHAM *v.* STATE OF INDIANA

[No. 25,179.   Filed December 23, 1927.]

1. HOMICIDE.—*Instruction defining assault and battery held erroneous.* —In charging the offense of assault and battery with intent to kill, it must be alleged that the assault and battery was unlawful, under §2419 Burns 1926, and in a prosecution on such charge, an instruction which attempted to define the offense of assault and battery, but which omitted that element of the offense, was erroneous, especially when the defendant was a peace officer.   p. 572.

2. CRIMINAL LAW.—*In prosecution of game warden for assault and battery with intent to kill, instruction held prejudicial error.*—In a prosecution of a game warden for assault and battery with intent to kill, the charge being based on his act while attempting to arrest violators of the fish and game laws, an instruction attempting to define assault and battery, but which omitted any reference to the unlawfulness of the act, was prejudicial error, where the defendant was convicted of that offense, as he was a peace officer with power to arrest without a warrant for violations of the law within his view (§4755 Burns 1926), and aggressive acts in making such arrest might be lawful which would be unlawful if performed by a private individual.   p. 572.

3. CRIMINAL LAW.—*Instruction on self-defense held erroneous in prosecution of game warden for shooting person resisting arrest.*—In a prosecution of a game warden for assault and battery with intent to kill, the charge arising from his shooting a man whom he was arresting for violating the fish and game laws, an instruction on the right of self-defense, which was correct as an abstract proposition of law, was erroneous because it did not go further and state his rights as an arresting peace officer.   p. 572.

4. CRIMINAL LAW.—*Instruction as to right of officer to use force in making arrest for misdemeanor held erroneous.*—In a prosecution of a game warden for assault and battery with intent to kill, based on the act of the officer in shooting a man who was resisting arrest for violation of the fish and game laws, an instruction that the officer would not be authorized to use force and instrumentalities which would imperil the life of the party resisting arrest and would be guilty of assault and battery at least if he used a dangerous weapon and inflicted wounds was erroneous, in view of §2159 Burns 1926, authorizing an officer to use "all necessary means" to effect an arrest.   p. 573.

5. ARREST.—*Force that may be used by officer in arresting misdemeanant.*—An officer, having the right to arrest one guilty of a misdemeanor, may use all the force that is reasonably necessary to acplish the arrest, excepting that he may not kill him or inflict great bodily harm endangering his life when he is fleeing.   He may also overcome resistance with such force, short of taking life, as is necessary to effect the arrest, and, in order to prevent the misdemeanant from seriously wounding or killing him, he may take his life.   p. 574.

6. CRIMINAL LAW.—*Instruction as to right of officer to use force to overcome resistance when making arrest held bad for not defining arrest.*—In a prosecution of a game warden for shooting one whom he was arresting for a violation of the fish and game laws (a misdemeanor), an instruction that the officer would not be authorized to use force and instrumentalities which would endanger the life of the misde-

meanant in order to overcome resistance to the arrest, was bad for the reason that it failed to define what constitutes an arrest.   p. 578.

7.   CRIMINAL LAW.—*Instruction that defendant, a game warden, in making an arrest should have stated that he was a deputy game warden and that he was making arrest as such, held erroneous.*—In a prosecution of a game warden for shooting one whom he was arresting for a violation of the fish and game laws, an instruction that the defendant should have stated to the accused that he was a deputy game warden, and was making the arrest as such, was erroneous, where the evidence showed that the defendant had notified him that he was an "officer." p. 578.

From Kosciusko Circuit Court; *Lemuel W. Royse,* Judge.

James A. Durham was convicted of assault and battery, and he appeals.   *Reversed.*

*J. Edward Headley,* for appellant.
*Arthur L. Gilliom,* Attorney-General, for the State.

MARTIN, J.—Appellant, a deputy warden or commissioner of fisheries and game, of the Indiana Department of Conservation, while engaged in the duties of his office, arrested and sought to hold in custody one Charles Long, for a violation of the fish and game law, which violation (taking fish by means of a gill net) appellant claimed had just been committed within his view, on Little Tippecanoe Lake about midnight, December 4-5, 1925.   Long, after being placed under arrest, resisted, and, with a companion, attempted to escape in a row boat.   Appellant, wading out in the water, clung to the boat and, after an exciting struggle or fight in the edge of the lake, shot Long with a revolver and wounded him.

The prosecution was by affidavit in one count charging appellant with unlawfully committing an assault and battery with intent and premeditated malice to kill and murder Long, and, after a trial by jury and a verdict of guilty of assault and battery and assessing a fine of

$700 was returned, judgment was rendered on the verdict.

Alleged errors, assigned as reasons in support of appellant's motion for a new trial, which was overruled, include the giving of three instructions on the court's own motion and in refusing to give a number of instructions requested by appellant.

The evidence pertinent to a consideration of the questions raised herein, briefly stated, is as follows: The prosecuting witness, Long, testified that he rowed the boat occupied by himself and his companion, Hammond, in to shore, that he stepped out on a pole laid out on the margin of ice at the lake's edge, and pulled the boat up; that appellant ran up to him, put his hand up toward him, and said, "You are under arrest"; that Long forcibly pushed appellant away with his open hand, got back in the boat and that he and his companion both pushed the boat out in the water with oars or paddles. That appellant ran toward the boat, wading out in the water and mud up to his knees (going in to his arm pits when he ran across to grab the bow) holding on first to the bow and later to the chain of the boat. That Long and Hammond would push and drag appellant out into the mud and water of the lake and appellant would yank the boat back. This happened "a few times." That appellant said, "Lay down that oar," "Put that oar down," "Cut it out," and that "he would shoot unless if I didn't lay the oar down" and that "he hollered for Manuel" (another game warden). That appellant shot twice, the second shot hitting Long, who was still "pushing the boat off," that Long then grabbed appellant's revolver and appellant "jerked back and hit me with it." That Long then grabbed the chain, but did not get it away from appellant, then Long struck at and hit appellant's gun and arm with an oar and then punched appellant in the stomach with the oar; that ap-

pellant then "snapped the gun at me, but it didn't go off" and that Long finally jerked the chain away from him and escaped.

The appellant testified that when Long stepped out on the shore, he stepped from behind some bushes, approached and said, "You men are under arrest; I am an officer, come on over to the lantern" (which Long had left on shore). That Long said, "I won't do it," that he took hold of Long's arm twice, but that Long jerked away, broke loose from him, struck him about the body with his fist, jumped into the boat and shoved it out into the lake. That appellant called for Manuel Klick (the other warden). That he waded into the lake and grabbed hold of the bow of the boat, that Long struck at him trying to make him let go of the boat but that he took his hands off, dodged the blows and again took hold of the boat; that Long turned to Hammond and said, "Hand me the boat oar and I will brain the son of a bitch." That Hammond handed Long the boat oar, and Long struck appellant a lick on the left shoulder, knocking him loose from the boat, whereupon appellant grabbed the boat's chain which hung down in the water, fired a shot with his revolver into the water, and said, "If you do that again I'll shoot you." That Long then struck at him several times, hitting him once on the left side of the face or cheek, while appellant kept telling him to, "Cut it out or I will shoot you." That Long again hit appellant on the shoulder close to the neck, whereupon appellant, who was then in water up to his armpits, shot at Long's arm to disable him and make him quit striking with the oar, and wounded him in the chest. That appellant feared for his life, being afraid Long would hit him over the head and sink him in the ice cold water. That Long then got back further in the boat, pushed and rowed, that appellant hung on until he

was exhausted and had to let loose of the chain and let them go.

Instruction eight given by the court was incorrect and erroneous, and appellee in its brief on confession of errors admits this and says, "We are unable to show from the record that appellant was not harmed by this instruction. He was actually found guilty of the degree of offense which the court had erroneously defined." The court in this instruction undertook to define assault and battery but omitted the element of unlawfulness. The touching alleged to be in a rude, insolent or angry manner must also be alleged to be *unlawful* before it can constitute the offense for which appellant was convicted. §2419 Burns 1926; *Cranor* v. *State* (1872), 39 Ind. 64. The failure of the court, in instruction eight, to state this element of the offense was particularly prejudicial to this appellant's rights because the nature of his duties as a peace officer (§4755 Burns 1926) makes necessary aggressive acts which may be lawful when performed by an officer in making an arrest, but which would be unlawful if performed by a private individual.

Instruction fifteen was to the effect that, before a defendant can exercise the right of self-defense, he must be free from fault, and that, if by his own unauthorized acts, he brought the assault upon himself, then he cannot claim the right of self-defense against such assault. This instruction, as an abstract proposition of law, is correct, but in the instant case, where the defendant was an officer of the law engaged in carrying out his duties as such, he was entitled to have included in the instructions a further statement of the law applicable to the exercise of self-defense by an arresting officer. The usual rules of the law as to self-defense are applicable to an arresting officer, but with certain qualifications. An officer may, of course, defend

himself like any other person who is assaulted, but the law does not stop there, but throws around him a special protection because he must of necessity press forward and accomplish his object, 2 R. C. L. 474, and, in such a case, the officer is entitled to have the jury so instructed. *Loveless* v. *Hardy* (1918), 201 Ala. 605, 79 So. 37. The acts of appellant in seeking to prevent Long's escape, prior to his act of shooting, could not, under any theory of law, be considered as "his own unauthorized act," but, on the contrary, were acts expressly required of him by law.

Instruction twelve was to the effect that if Long resisted arrest, appellant would not be authorized to use such force and instrumentalities as would imperil

4. the life of Long in order to overcome his resistance; that human life is too precious to be imperiled by the arrest of one who is only guilty of a misdemeanor; that if appellant, in order to overcome Long's resistance, used a dangerous and deadly weapon, and in such manner as to endanger his life, and thereby inflict serious wounds, then the appellant would be guilty of assault and battery, at least. This instruction, standing alone or considered in conjunction with instruction fifteen and the other instructions, did not correctly state the law, and the court erred in giving it.

Our general statutes concerning arrests, and applicable to all classes of criminal cases, provide that: "the defendant shall not be subject to any more restraint than is necessary for his arrest and detention." §2157 Burns 1926. "If, after notice of intention to arrest the defendant, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest." §2159 Burns 1926.

In *Plummer* v. *State* (1893), 135 Ind. 308, 34 N. E. 968, the court said: "The law does not allow a peace officer to use more force than is necessary to effect an

Durham *v.* State—₁99 Ind. 567

arrest. . . . And if he do use such unnecessary force, he . . . may be lawfully resisted. . . . If the officer is resisted before he has used needless force and violence, he may then press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary."

The degree or limit of force that lawfully may be employed by an officer in arresting one charged with a misdemeanor (as distinguished from a felony) has been considered in a large number of cases in other jurisdictions. See cases collected and cited in 5 C. J. .426; 2 R. C. L 473; 2 Brill, Cyc Criminal Law §§692, 713; Laning, Arrest and Prosecution p. 508; Clark and Marshall, Law of Crimes (2d. ed.) §271; Notes in 3 A. L. R. 1170-1177 and in 42 A. L. R. 1200-1207.

The general rules deduced therefrom may be stated to be:    (A) that an officer having the right to arrest a misdemeanant may use all the force that is reasonably necessary to accomplish the arrest, except (B) that he may not, merely for the purpose of effecting the arrest, kill or inflict great bodily harm endangering the life of the misdemeanant;[1] thus an officer may not kill or shed blood in attempting to arrest a misdemeanant who is fleeing, but not resisting.[2] (C)

---

[1] The law considers it better and more in consonance with modern ideas regarding the sanctity of human life to allow one to escape who is guilty only of a misdemeanor, and whose offense will subject him only to a small fine or short imprisonment, rather than to sacrifice his life. *Reneau* v. *State* (1879), 2 Lea (70 Tenn.) 720, 31 Am. Rep. 626; *United States* v. *Clark* (1887), 31 Fed. 710; *Thomas* v. *Kinkead* (1892), 55 Ark. 502, 18 S. W. 854, 29 Am. St. 68, 15 L. R. A. 558; *Head* v. *Martin* (1887), 85 Ky. 480, 3 S. W. 622 ; *Skidmore* v. *State* (1877), 2 Texas Court of Appeals 20.

[2] The most common examples of this class of cases are those where officers shoot at misdemeanants, their mounts, or their automobile tires and wound or kill the misdemeanants.

"To permit the life of one charged with a mere misdemeanor to be taken when fleeing from the officer would, aside from its inhumanity be productive of more abuse than good. The law need not go unenforced. The officer can summon his posse and take the offender." *Head* v. *Martin, supra.*

That if the defendant physically resists, the officer need not retreat, but may press forward and repel the resistance with such force, short of taking life, as is necessary to effect the arrest; and if in so doing, the officer is absolutely obliged to seriously wound or take the life of the accused, in order to prevent the accused from seriously wounding or killing him, he will be justified.[3]  *Smith* v. *State* (1894), 59 Ark. 132, 26 S. W. 712, 43 Am. St. 20; *Fugate* v. *Commonwealth* (1920), 187 Ky. 564, 219 S. W. 1069; *Smith* v. *Commonwealth* (1917), 176 Ky. 466; *State* v. *Dunning* (1919), 177 N. C. 559, 98 S. E. 530, 3 A. L. R. 1166 and note; *State* v. *Dierberger* (1888), 96

---

See the following:  Note 67 L. R. A. 300; *Wiley* v. *State* (1918), 19 Ariz. 346, 170 P. 869, L. R. A. 1918D 373 and note:  *Brown* v. *Weaver* (1898), 76 Miss. 7, 42 L. R. A. 423; *Commonwealth* v. *Loughhead* (1907), 218 Pa. 429, 120 Am. St. 896; *Sossamon* v. *Cruse* (1903), 133 N. C. 470; *State* v. *Coleman* (1905), 186 Mo. 151, 84 S. W. 978, 69 L. R. A. 381.

[3] Most of the texts divide the cases involving shooting or killing of those arrested for misdemeanors by officers where resistance is met, into two classes:  (a)  Those holding that, if a misdemeanant resists arrest, the officer may use such force as is necessary to effect it, even to severely injuring or killing the offender; and (b) those holding that the officer is never justified in taking or endangering life except in self-defense.  5 C. J. 426, Arrest §62 n. 95, 97 and 98; 2 R. C. L. 473, Arrest §30 n. 3, 4 and 7; 2 Brill, Cyc Cr. Law §692 n. 73-77, §713 n. 33; Clark and Marshall, Law of Crimes (2d. ed.) §271; Note 3 A. L. R. 1175; Note 42 A. L. R. 1203.  But, as has already been noted, the protection which an officer is entitled to receive in making an arrest is a different thing from self-defense, for it is his duty to push forward and make the arrest and to secure and retain custody of the prisoner, and Mikell in Clark, Cr. Proc. (2d ed.) §17. note 50 points out that: "though in theory the distinction between killing to effect the arrest and killing only in self-defense may be important, the result in an actual case is the same. . . .  All cases agree that the officer need not abandon the effort to complete the arrest because of . . .  resistance  . . .  and that it is his duty to continue this effort. . . . It will never be apparently necessary to kill to effect the arrest until the officer's life is in apparent danger, for until that time it does not appear but that a little more force than is being used will be sufficient to effect the arrest without killing."

See, also, the following cases in support of the text above:  *Donehy & Prather* v. *Commonwealth* (1916), 170 Ky. 474; *Commonwealth* v. *Marcum* (1909), 135 Ky. 1, 122 S. W. 215, 24 L. R. A. (N. S.) 1194; *Thomas* v. *Kinkead, supra; State* v. *Coleman* (1905), 186 Mo. 151, 69 L. R. A. 381; *Loveless* v. *Hardy, supra; Commonwealth* v. *Greer* (1898), 20 Pa. Co. 535; *State* v. *Garrett* (1863), 60 N. C. 144, 84 Am. Dec. 359; *Lynn* v. *People* (1897), 170 Ill. 527, 48 N. E. 964; *U. S. Bank & Trust Co.* v. *Switchmens Union* (1917), 256 Pa. St. 228, 100 Atl. 808, L. R. A. 1917E 311.

Mo. 666, 675, 10 S. W. 168, 9 Am. St. 380; *Krueger* v. *State* (1920), 171 Wis. 566, 177 N. W. 917.

To adopt the rule contended for by the prosecution in the trial below and stated by the court in instruction twelve would be to paralyze the strong arm of the law and render the state powerless to use extreme force when extreme resistance is offered, and would permit misdemeanants to stay the power of the state by unlawful resistance.[4]

"To say to a defendant 'you may measure strength with the arresting officer, and avoid being taken if you are the stronger, or, after your arrest, you may break away unless he can prevail over you in a wrestle,' is to elevate mere brute force to a position of command over the wheels of justice" I Bishop, Crim. Proc. (2d ed.) §16.

In the trial of this case, it would seem that the duty of officers to enforce the fish and game laws (§§4738, 4743, 4755 Burns 1926) and to prevent a prisoner from escaping from custody (§2608 Burns 1926) as well as the duty of citizens to submit peaceably to lawful arrest were almost lost sight of. This is illustrated by the following quotations from the record of the cross-examination of the appellant: "Q. You knew at that time,

---

[4]"An officer, in the performance of his duty as such, stands on an entirely different footing from an individual. He is a minister of justice, and is entitled to the peculiar protection of the law. Without submission to his authority there is no security and anarchy reigns supreme. He must, of necessity, be the aggressor, and the law affords him special protection. In his capacity as an individual he may take advantage of the 'first law of nature,' and defend himself against assault; as an officer he has an affirmative duty to perform, and in the performance thereof he should, so long as he keeps within due bounds, be protected. Sentimentalism should not go so far as to obstruct the due administration of law, and brute force should not be permitted to obstruct the wheels of justice." *State* v. *Smith* (1905), 127 Iowa 534, 103 N. W. 944, 109 Am. St. 402, 70 L. R. A. 246, 4 Ann. Cas. 758. This language was used in a case where the officer arrested a misdemeanant and killed one who sought to rescue the prisoner and whose act in so doing was by statute made a felony, but the reasoning quoted is none the less applicable here. A note concerning the right of an officer to kill a misdemeanant in order to effectuate an arrest accompanies the report of this case in 4 Ann. Cas. at page 760.

Mr. Durham, you would have been in perfect safety if you had let loose of the chain? A. They (the state) didn't employ me to let loose of the chain. Q. You held on to that chain notwithstanding the fact that you thought you would be brained, for the purpose of effecting that arrest, didn't you? A. I held on to the chain to arrest those fellows and keep them there until my partner returned. Q. Didn't you know you would have been in perfect safety without chance of a scratch if you let loose of that chain? The court overruled appellant's objection to this question. A. No I didn't. He might have hit me before I got back out of the water. Q. He wasn't pursuing you at any time, was he? A. He was striking at me Q. You knew if you let loose of that chain or boat that Long and he (Hammond) would get away from you didn't you? A. Yes Sir." It also appears from the record that the prosecuting attorney refused to prosecute Long for his violation of the law and promised him that he would not be prosecuted if he would testify for the state in this case.

Many acts which are not inherently wrong and involve no moral turpitude, have been made unlawful by statutes enacted in the interest of the welfare of the public or state, or for the conservation of its natural resources. The law against seining fish is such a law, and respect for our government and its authority requires that a citizen obey the law. It is a narrow attitude and one that is dangerus to our country for those who may feel that their personal rights and liberties have been wrongfully curtailed by legislation to seek to nullify the law by violation thereof and by defying constituted legal authority when placed under arrest.

Instruction twelve was also bad for two additional reasons. (1) It failed to instruct on the question of

what constitutes an arrest.    It was material in
6, 7.   this case for the jury to know what constituted an
arrest and the statutory definition of arrest and
the authority and requirements in respect thereof should
have been embodied in the instructions.   The court also
refused to give an instruction tendered by appellant de-
fining arrest. (2)   It required that appellant should
have been more specific in informing Long that he was
an "officer," and should have stated that he was a
"deputy game warden and was making the arrest as a
deputy game warden."   The evidence was sufficient to
submit the question of a valid arrest to the jury without
a special requirement being made by the court in re-
spect to the particular classification of appellant as
an officer.

The judgment is reversed, with directions to sustain
appellant's motion for a new trial and for further pro-
ceedings not inconsistent herewith.