## LUCKADO *v.* STATE OF INDIANA.

[No. 13,616. Filed May 29, 1929. Rehearing denied August 1, 1929.]

*William Smith* and *Robert W. Armstrong*, for appellant.
*Arthur L. Gilliom*, Attorney-General, and *Harry L. Gause*, Deputy Attorney-General, for the State.

NEAL, J.—Appellant was charged by an indictment with the commission of assault and battery with intent to kill and murder one Robert J. Woods. Appellant was tried by a jury, which returned a verdict finding him guilty of assault and battery, and fixed his fine in the sum of $100, to which was added a jail sentence of six months. The only error assigned arises on the overruling of the motion for new trial. The appellant, in the motion for new trial, sets forth several causes, viz.: (a) Errors of law in admitting several items of evidence over the several objections of appellant; (b) errors of law in the giving and the refusal to give certain instructions to the jury; (c) that the verdict of the jury is contrary to law.

The only cause for a new trial which appellant has presented under the subdivision of his brief entitled "Points and Authorities" is that the verdict of the jury is contrary to law. In this case, "we are not called on to weigh the evidence, but only to

determine whether there is an absence of evidence in support of the verdict as a whole, or of some material fact." *Chapman* v. *State* (1901), 157 Ind. 300, 61 N. E. 670.

The evidence in support of the verdict of the jury may be summarized as follows: On November 12, 1925, and for some time prior thereto, appellant was a resident of the city of Rockport, Indiana, residing on Washington street in said city and maintaining a home for his wife and daughter on premises leased by him; on the evening of said November 12, the daughter, who was a student of Rockport High School, returned home about 5 o'clock p. m.; the father (appellant herein) reprimanded the daughter for arriving home at the hour above named and also objected seriously to the daughter keeping company with a certain young man, which was bitterly resented by the daughter; appellant became enraged during the altercation, slapped his daughter, and, when the mother attempted to interfere, "knocked" her to the floor; the daughter immediately left home, proceeded to the office of a justice of the peace, filed an affidavit against her father for assault and battery, and the justice thereupon issued a warrant for appellant's arrest and delivered the same to Robert J. Woods, then sheriff of Spencer county, as a special constable; the daughter, in company with the young man above referred to, proceeded to return home, and when within a few feet of her destination, she was met by her mother and a neighbor woman; the appellant was standing near the mother and daughter and was within hearing distance of the conversations which took place; the mother advised the daughter at such time not to enter the yard because the appellant was carrying a shotgun; the daughter and young man became alarmed, turned about and fled; the mother at such time was heard to call in in a loud voice, "don't shoot"; the neighbor woman, above mentioned, came to appellant's home im-

mediately after the family wrangle, entered the house, observed appellant walking in the yard with a gun in his hands, talking to himself and heard him say, "If Woods came out, he was going to kill him." The special constable Woods arrived at the home of appellant about 7 o'clock. It was dark and the street lights were burning. Woods had proceeded three or four steps into the yard before he observed appellant, who rose from behind an object, and called out "Who is that?" Woods answered, "It is Bob Woods the sheriff." Appellant then said "Come a foot farther and I will blow your head off." Woods, in turn, advised appellant to drop his gun and behave himself. Appellant then cocked his gun and Woods commanded him to drop his gun and put his hands up. Appellant was in the act of raising the shotgun to fire at Woods, who, at the same instant, drew his revolver and fired. The evidence is conflicting as to which of the two fired the first shot. Woods was seriously wounded, several shots penetrating his head, one of which destroyed an eye. The appellant also received a shot in his shoulder.

A resume of appellant's testimony is to the effect that he admitted slapping his daughter; that, on November 12, he had gone up town "to purchase a box of shells to go rabbit hunting"; that on his return home he observed that his fowls had been annoyed by dogs and, about dark, took his gun, walked about in his yard to investigate a further disturbance among his ducks; that he took a seat on a box in the yard, and his attention was called to a man passing his premises with a sack of what appeared to be corn; he immediately became convinced that someone was stealing his corn and proceeded to stretch a wire from tree to tree, attach a sheep bell thereto in such a manner as to give warning if a thief should attempt to invade his corncrib; that while engaged in fixing the wire, a car drove near his place, a man alighted

therefrom, and walked as if he were intoxicated; that he called to the man and asked what he wanted; that the stranger immediately ran towards a barrel in the yard, squatted behind it, uttered an oath, and commenced shooting; that he did not have a load in his gun when the stranger fired at him, but, after the first shot, believing his life in danger, he loaded his gun and discharged the contents at the man, whom he did not know.

The appellant says that the evidence is susceptible of two inferences: (a) The appellant fired in self defense; (b) that he (appellant) was the aggressor, therefore guilty as charged; that the jury cannot choose between opposite inferences and adopt the one which seems most probable or most reasonable; that the law makes the choice for the jury and requires it to return a verdict in favor of appellant; that when the above condition attains and a verdict is returned, it is the duty of an appellate tribunal to set aside the verdict as contrary to law.

In this case, the evidence is direct and slightly circumstantial. If it can be said that the circumstantial evidence is of such "a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused and the other favorable to his innocence, then, under such circumstances, it is not within the province of the Supreme Court to determine which inference ought to control the jury." Lee v. State (1921), 191 Ind. 515, 132 N. E. 582. The jury was the exclusive judge of the credibility of the witnesses. The jurors in arriving at a verdict were confronted with conflicting evidence. It was necessary for the jury, in reaching a conviction of guilt, to disbelieve the greater part of the testimony of appellant and believe the testimony of Woods, the special constable. Certainly, it is not within the province of an appellate tribunal to weigh the evi-

dence. See *McCaughey* v. *State* (1901), 156 Ind. 41, 59 N. E. 169.

The officer had been given a warrant for the arrest of appellant. He was in the act of performing a duty. When the sheriff, who was acting as a special constable, entered the yard, he was met by most serious resistance. In the case of *Durham* v. *State* (1927), 199 Ind.. 567, 159 N. E. 145, the court said: "If the defendant physically resists, the officer need not retreat, but may press forward and repel the resistance with such force, short of taking life, as is necessary to effect the arrest; and if, in so doing, the officer is absolutely obliged to seriously wound or take the life of the accused, in order to prevent the accused from seriously wounding or killing him, he will be justified."

The verdict is not contrary to law. There is not an absence of evidence to sustain a material fact. Casting aside all evidence to support the theory of appellant, and predicating the verdict of the jury on the evidence most favorable to the state, only one inference can be drawn, and that is the appellant is guilty as charged.

Judgment affirmed.