SARAH FRANCES WILSON, A/K/A FRANCES H. WILSON *v.* JERRY MILLER, INC. AN INDIANA CORPORATION.

[No. 2-173A1. Filed July 31, 1973. Rehearing denied September 20, 1973. Transfer denied February 18, 1974.]

*William C. Erbecker,* of Indianapolis, for appellant.

*Robert H. Orbison, Baker & Orbison,* of counsel, of Indianapolis, for appellee.

HOFFMAN, C.J.—This is an appeal by defendant-appellant Sarah Frances Wilson (Wilson) from a judgment entered in favor of plaintiff-appellee Jerry Miller, Inc., an Indiana Corporation. Miller, in its action, sought recovery of money allegedly had and received by Wilson for the use and benefit of Miller.

Miller asserted in its complaint that Wilson was indebted to it in the sum of $102,847.84 and that such amount was due and unpaid.

The case was tried by the court without the intervention of a jury. In its judgment entered on July 25, 1972, the trial court found that Wilson misappropriated the aforementioned sum from Miller during the years 1965, 1966, 1967, 1968, 1969 and 1970. Damages were awarded for the entire amount sought by Miller. Thereafter, Wilson's motion to correct errors was overruled and this appeal followed.

The evidence most favorable to the appellee discloses that Wilson had been employed as bookkeeper for Miller from 1954 to 1970, and that she had charge of the office and complete charge of the books but that some of the entries in the books were made by other employees under her supervision.

On March 17, 1970, a check of the corporation's records by its auditor revealed a bank shortage of from $10,000 to $12,000. Gerald Lee Miller, president of appellee corporation, testified that on March 24, 1970, he spoke to Wilson concerning the shortage and further stated that she had no recollection of its existence. However, according to Miller, Wilson mentioned having written herself four checks for personal use. The next day, upon Miller's request, Wilson brought him the four checks which totaled $2,414.48. While personally examining the corporation's inventory sheets, Miller noticed that several number ones had been

placed in front of figures entered in the right-hand columns. This conveyed the appearance that more assets were included in the inventory than were actually existent. However, the "ones" were in no discernible handwriting.

A later examination of the corporation's books by a certified public accountant revealed a number of recorded but undeposited receipts which, together with the bank shortage, amounted to a loss of $100,433.36. This audit showed that the loss was sustained in varying amounts from 1965 through 1970.

Moreover, Bertram J. Carmack, who checked the books, testified that during at least three years the undeposited receipts were balanced by check entries charged to the inventory account. Since no such checks ever reached the bank, Miller's books balanced and its bank account was reconcilable. Thus, only a careful examination of each entry would reveal any discrepancies.

Also, Carmack stated that the person who made the check entries would have to be the person who had knowledge of the non-deposit at the bank since the entries were made to conceal and offset the missing deposits.

The sum of $102,847.84, which was awarded to Miller, was arrived at through addition of the $100,433.36 loss and $2,414.48, the amount of the four checks written by Wilson.

The first issue is whether sufficient evidence was presented to establish that Wilson had appropriated to her own use the amount of money alleged in Miller's complaint.

While Wilson admits to a misappropriation of $2,414.48, she asserts that Miller has not established that she misappropriated the much larger amount awarded Miller by the trial court. By reason of this alleged insufficiency of evidence, she contends that such judgment was thereby contrary to law.

Conversely, Miller asserts that the decision of the trial court was supported by sufficient evidence upon all necessary elements of its claim.

Indiana has often reiterated the rule that only in instances in which the evidence is without conflict and can lead to but one result, and the trier of fact has reached an opposite result, will that judgment or verdict be set aside as being contrary to law. *Echterling* v. *Jack Gray Transport, Inc.* (1971), 148 Ind. App. 415, 267 N.E.2d 198, 24 Ind. Dec. 682; *Nationwide Mut. Ins. Co.* v. *Day* (1967), 140 Ind. App. 564, 224 N.E.2d 520 (transfer denied). Further, this court will not weigh the evidence adduced at trial. *Uhlman* v. *Johnson et al.* (1965), 137 Ind. App. 600, 210 N.E.2d 442. And, in reviewing such a case, we may only determine whether there exists evidence of probative value to support the finding of the trier of fact. *Cox* v. *Schlachter* (1970), 147 Ind. App. 530, 262 N.E.2d 550, 23 Ind. Dec. 60 (transfer denied) ; *Palmer* v. *Decker* (1970), 253 Ind. 593, 255 N.E.2d 797.

Testimony has established that Wilson had complete charge of the office; that she supervised the records and books of the corporation; that, on occasion, she took the books and inventory sheets home to work on them; that she was authorized to write checks for the corporation; that the right-hand columns of figures on the inventory sheets in question were in her handwriting; that Wilson was employed by Miller as bookkeeper for the entire period during which the loss occurred; and that she made some bank deposits, purchased merchandise and waited on customers. In short, she had considerable authority in her supervisory capacity. Such attributes would aid a person involved in a misappropriation of funds. Moreover, it is improbable that anyone could effectuate such an extensive and long-term scheme without concurrently possessing freedom of movement, considerable responsibility and respect.

The aforementioned evidence, together with testimony that check entries were made in the books to hide the missing

deposits that the person withholding the receipts would have had to be the same person who made the balancing check entries; that figures in the right-hand columns of several inventory sheets were raised; and that Wilson did, in fact, write four unauthorized checks "for personal use", constitutes evidence of probative value from which the trier of fact could have reasonably inferred that Wilson misappropriated the entire amount of Miller's loss.

The second issue is whether Wilson was denied a fair trial in that she was precluded from denying, at one point in her testimony, the accusations made against her. During the proceedings, Wilson, on direct examination, was asked the following question:

"Q. Did you ever at any time accept or receive or take possession of this hundred thousand dollars that is the subject matter of this law suit?"

This elicited an immediate objection from appellee based upon the contention that the question was leading. At the court's request, the question was repeated and is stated in the record as follows:

"Q. Did you ever, at any time during your employment with that company, particularly in the years of 1965, 1966, 1968, 1969, and 1970, accept, take possession of, purloin, or get this one hundred and two thousand eight hundred and forty-seven dollars and eighty-four cents which is the subject matter of this decision?"

Subsequently, an objection upon the same grounds was sustained and the court permitted Wilson to make an offer to prove.

Wilson contends that she was precluded in her defense presentation from denying the charge made against her and thereby prevented from making a defense.

This assertion is without merit in view of the admission of Wilson's offer to prove and also in light of her subsequent testimony which reads as follows:

"Q. Now, the Complaint, rhetorical paragraph 2 alleges that you are indebted to the Plaintiff corporation in the sum of a hundred and two thousand eight hundred and forty-seven dollars and eighty-four cents. Which is it is alleged that you received for the use, that belonged to the Plaintiff. Is that true?

"A. No.

"Q. You do admit this indebtedness of approximately, those four checks. You do admit that?

"A. Yes, I do."

The final issue is whether Wilson was denied due process of law by reason of the manner in which the trial was conducted.

Appellant contends that she was denied due process as a result of alleged inattentiveness and bias on the part of the court, and because of frequent interruptions during trial.

We are not persuaded by the several affidavits proffered by Wilson, her defense counsel and others present at the trial, that she was prejudiced by the mode in which the trial was conducted, nor do the affidavits demonstrate that she was denied due process.

The affidavits in question which were filed pursuant to TR. 59(D), Ind. Rules of Procedure, stand uncontroverted yet indicate only that from four to seven interruptions occurred during the course of the trial and that the court appeared inattentive. From this, we are urged to infer a denial of due process. Subjective observations concerning degrees of attention do not, although sincerely made, elicit a ready acceptance. Moreover, we are not inclined to accept a contention that interruptions, however frequent, are a denial of due process where no overt display of confusion or disorientation on the part of the

trial court is apparent from specific reviewable dialogue. Our attention is directed to no specific instance by appellant's affidavits in support of this contention and we may not search the record to find reversible error. *Nationwide Mut. Ins. Co.* v. *Day, supra* (1967), 140 Ind. App. 564, 224 N.E.2d 520 (transfer denied).

Further, the distinct lack of objection during trial to the alleged unfair practices detracts from the cogency of this argument.

Appellant Wilson has not supported other contentions within the scope of the due process issue with any authority. When such is the case, review is waived. Rule AP. 8.3(A)(7), Ind. Rules of Procedure.

No reversible error having been shown, the judgment of the trial court is hereby affirmed.

Affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 299 N.E.2d 177.