MONTGOMERY WARD & CO., INC. *v.* THOMAS E. TACKETT AND CASSANDRA TACKETT.

[No. 1-1173A195. Filed February 18, 1975.]

*Thomas A. Berry, Ferguson, Berry, Ferguson & Lloyd,* of Bloomington, for appellant.

*Mark Peden, Foley, Foley and Peden,* of Martinsville, for appellees.

LYBROOK, J.—Plaintiff-appellant Montgomery Ward & Co., Inc., initiated this action with the filing of its complaint on account. Defendants-appellees Thomas and Cassandra Tackett counterclaimed alleging fraudulent misrepresentation and wrongful termination of a franchise agreement between the parties. Trial by jury resulted in verdicts in favor of Montgomery Ward on its complaint and in favor of Tacketts on their counterclaim. From the verdict on the counterclaim, Montgomery Ward appeals.

In general terms, the issues presented for review are:

1.  Whether the verdict on the counterclaim is contrary to the evidence and contrary to law.

2.  Whether the award of damages to counterclaimants is excessive.

During January, 1969, defendant-appellee Thomas Tackett answered a newspaper advertisement soliciting the sale of a Montgomery Ward catalog sales agency located at Martinsville. Tackett's initial inquiry was with Herb Chambers, then owner of the agency. After completing an application, Tackett was contacted by Ward representatives Leon Welch and Bill Rose. As a result of negotiations with Chambers, Welch and Rose, the Tacketts purchased the agency from Chambers and entered into a franchise agreement with Montgomery Ward on February 20, 1969.

Reduced to essential terms, the franchise agreement provided that Tacketts would purchase merchandise from Montgomery Ward, resell it to customers, and receive commissions from Ward. The responsibility for the operation and maintenance of the agency rested solely with the franchise agent. Further, the agreement required that Tacketts at all times operate the agency in accordance with "Current Policies and Procedures" of Montgomery Ward.

The franchise agreement was unilaterally terminated by Montgomery Ward in June of 1971, and this action on account due and owing was initiated in February of the following year. A catalog operating manager for Montgomery Ward testified that termination was due to the discovery through audit procedures of the submission of allegedly improper inventory clearance adjustments (ICA's) by the Tacketts. An ICA is a document submitted by the franchise agent to Montgomery Ward upon which the agent may claim credit for merchandise which has been previously ordered and paid for but has not been received. Should the agent subsequently receive merchandise for which credit has been claimed, his proper course of action is to file a second ICA charging back

to himself the credit claimed on the first ICA. The charge back to the agent on the second ICA is denominated an RNC. Montgomery Ward alleged the filing by Tackett of ICA's improperly claiming credits totaling $2332.63. The total amount claimed due and owing, including delinquent remittances for merchandise ordered was $10,036.72.

Tacketts' counterclaim asserted that the termination of the franchise agreement by Ward without notice and without any attempt to consult, advise, or negotiate with the agents was accomplished in bad faith. For the alleged wrongful termination of the agreement, Tacketts sought actual and exemplary damages totaling $60,000. In a second paragraph, Tacketts alleged that their entry into the franchise agreement had been induced by various fraudulent misrepresentations by agents of Montgomery Ward. Damages due to reliance on the alleged misrepresentations were claimed in the amount of $25,000.

Trial upon the issues resulted in verdicts for Montgomery Ward on its complaint in the amount of $8,000 and for Tacketts on their counterclaim in the amount of $11,000. This appeal is from the entry of judgment on the verdict on the counterclaim.

## I.

Montgomery Ward initially argues that there was no evidence adduced at trial from which the jury could have found that the termination of the franchise agreement was wrongful. It flatly asserts that Tacketts failed to follow "Current Policies and Procedures" by failing to pay for merchandise received and by creating fictitious business records designed to mislead Ward to believe that the merchandise either had not been received or had been returned to Ward. The franchise agreement provided for termination by Ward in the event of the failure of the agent to follow "Current Policies and Procedures."

The question presented is that of the sufficiency of the evidence to sustain the verdict in favor of Tacketts on their

counterclaim. The standard of review to be employed permits us neither to weigh evidence nor resolve questions concerning credibility of witnesses. Thus, we are limited to an examination of that evidence and the reasonable inferences therefrom which support the verdict in determining whether it is sustained by substantial evidence of probative value. *In re Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490; *Wilson* v. *Jerry Miller, Inc.* (1973), 157 Ind. App. 135, 299 N.E.2d 177.

The evidence reveals that the relationship between the parties was fraught with difficulty and misunderstanding from its inception. However, the core of the conflict revolved around the system of payments and credits for merchandise ordered by Tackett for sale to customers. Testimony revealed that the policy in effect during 1971 was that agents were to prepare a weekly report and remit payment for shipments of merchandise received during that week. An error in shipment such as damage to goods or a failure to receive certain items did not relieve the agent of liability for payment. The agent's recourse in the event of such an error was to file an ICA claiming credit. Tackett testified that many of the shipment errors were substantial, and that while the policy of Ward as explained to him was to act upon and return ICA's within ten days, his claims were in many instances delayed for months. He further testified that Ward refused to honor many of his valid claims for credit.

In the event that an agent eventually received an item for which he had previously claimed credit on an ICA, the proper procedure was to file an RNC through which the credit would be charged back to the agent. Tackett testified that he at times withheld RNC's due to problems he was experiencing with Ward in their handling of his ICA's claiming credit. A second reason given by Tackett was the failure of Ward to render certain aid and assistance which had been promised when he entered into the franchise agreement. Ward representatives had provided Tackett with a list of telephone num-

bers and assured him that he might make collect calls to solicit assistance with problems encountered in operating the store. However, Tackett experienced difficulty contacting proper persons and Ward required that he pay for the calls.

Tackett requested auditor assistance from Ward on several occasions, including one request as early as 1970. One reason for the requests was that the store, which had been opened several years prior to its acquisition by the Tacketts, had never undergone an audit, and Tackett desired to rid himself of extensive records which had accumulated. Secondly, Tackett desired the audit as a means through which to settle his financial difficulties with Ward.

An auditor, Earl Bruzan, was sent to Tacketts' agency during the early part of June, 1971. No reasons were given for the audit and Tackett assumed that it was in response to his earlier requests. At that time, Tackett explained to Bruzan that he was withholding RNC's or charge backs due to the problems he was experiencing with Ward.

Following completion of the audit, Tackett's next contact with a Ward representative was on June 21, 1971, when District Manager Larry Brown visited the agency and presented Tackett with a sales award. Brown remained in the store for one to two hours and appeared to be making an inventory check. Later that day, Brown, Bruzan and a member of Ward's Security Division, Paul Miller, entered the store and indicated that they wished to speak with Tackett concerning certain discrepancies revealed in the audit. Miller requested a private conversation with Tackett in the back room. A discussion ensued concerning the withheld charges, the reasons for which Tackett had discussed earlier with the auditor Bruzan. "To clear it up," Tackett was induced to sign a statement agreeing to remit to Ward $1,586.49. After signing the statement, Tackett was informed that his franchise would probably be terminated. Shortly thereafter, Tackett received formal notice of the termination.

The relationship of principal and agent is confidential and fiduciary, binding the agent to the exercise of utmost good

faith. *Fast* v. *Judy* (1925), 83 Ind. App. 85, 147 N.E. 728; *Carmichael* v. *Lavengood* (1942), 112 Ind. App. 144, 44 N.E.2d 177. See also, 3 CJS, *Agency* § 271. Likewise, the principal owes to the agent the obligation of exercising good faith in the incidents of their relationship and must use care to prevent the agent from suffering harm during the prosecution of the agency enterprise. *Lawrence Warehouse Co.* v. *Twohig* (8th Cir. 1955), 224 F. 2d 493. See also, 3 Am. Jur. 2d, *Agency* § 238; 3 CJS, *Agency* § 318; Restatement (Second) of Agency § 435 (1957). Further, a contract of agency carries an implied obligation of the principal to do nothing to thwart the effectiveness of the agency. *Sidella Export-Import Corp.* v. *Rosen* (1948), 273 App. Div. 490, 78 N.Y.S.2d 155.

In our opinion, sufficient evidence was adduced from which the jury could have found that Montgomery Ward failed to exercise good faith in its course of dealing with the Tacketts. Throughout the course of the agency, Tackett sought auditor assistance from Ward as a means through which to settle disputed financial problems. However, Ward appeared to have no corresponding desire to seek a resolution of the parties' disagreements. It was not necessary that the jury infer fraudulent intent from the withholding by Tackett of the RNC's or charges back to himself. Rather, it could have been inferred that such action was Tackett's only available response to Ward's failure to follow expressed policies and procedures by delaying and improperly denying Tackett's ICA's or claims for credit. Tackett explained to Bruzan his reasons for withholding the RNC's at the commencement of the audit. However, even when fully apprised of Tackett's position and motives, Ward was apparently unwilling to engage in any type of dialogue to determine whether the parties' difficulties could be resolved. Instead, Ward chose the expedience of termination.

## II.

The wrongful exercise of the principal's power to revoke an agency will render the principal liable in damages if substantial injury is sustained by the agent. *Shumaker* v. *Hazen* (Okla. 1962), 372 P.2d 873; *McKellop* v. *Dewitz* (1914), 42 Okla. 220, 140 P. 1161.

Montgomery Ward emphasizes that the franchise agreement did not accord to either party the absolute right to continue the agency relationship. In fact, we note that either party was accorded the right of termination in any year as of the anniversary date of the agreement. Further, the agreement limited Ward's liability to the agent upon termination to compensation for orders received and filled by Ward up to the date of termination.

In no respect do we question the validity of the terms governing termination of the franchise agreement. However, we do not believe it consistent with sound public policy to permit Ward to employ those provisions as a shield against liability for termination accomplished in breach of its duty to exercise good faith.

We are unable to accept Ward's contention that the award of $11,000 compensatory damages to Tacketts is excessive. Among the items of damage to which Tackett testified are the following: Initial investment in the business of $2,500; investment of $4,200 in the business during a truck strike in 1970; merchandise other than display inventory left in the store totaling $8,524.10 in value; charges to Tackett for display merchandise left in the store totaling $3,799.27; valid claims for credit refused by Ward during the period from 1969 through 1971 totaling in excess of $4,500. Considering the evidence most favorable to the appellee, we cannot conclude that the award of damages is either manifestly excessive or clearly unwarranted in amount. See, *Levin* v. *Schuckman* (1971), 150 Ind. App. 254, 276 N.E.2d 208.

## III.

It is the duty of this court to sustain the decision of the trial court on any theory supported by the evidence. *In re Estate of Barnett, supra; Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E.2d 816. Tacketts' counterclaim was in two paragraphs. The first claimed compensatory and exemplary damages for alleged wrongful termination of the franchise agreement. The second alleged that Tacketts had been induced to enter into the franchise agreement through various fraudulent misrepresentations by agents of Montgomery Ward, and claimed compensatory damages. The jury returned a general verdict awarding compensatory damages on the counterclaim. In resolving the question of the sufficiency of the evidence to sustain the verdict, we need only determine that the verdict is supported by sufficient evidence upon either of the two paragraphs. *Ohio Finance Co.* v. *Berry* (1941), 219 Ind. 94, 37 N.E.2d 2; *Clarke Auto Co.* v. *Reynolds* (1949), 119 Ind. App. 586, 88 N.E.2d 775.

Since we have determined that sufficient evidence was presented to sustain the verdict under paragraph one of the counterclaim, we need not examine the sufficiency of the evidence to sustain a recovery under paragraph two. However, Montgomery Ward has also assigned as error the decision of the trial judge overruling its motion for judgment on the evidence as to both paragraphs of Tacketts' counterclaim made prior to submission of the cause to the jury. Despite our determination of the sufficiency of the evidence to sustain the verdict under paragraph one, we are unable to conclude that error, if any, in the court's ruling as to paragraph two was harmless.

Review of rulings on motions governed by Ind. Rules of Procedure, Trial Rule 50, is subject to the standard found in *Jones* v. *Indianapolis Power & Light Co.* (1974), 158 Ind. App. 676, 304 N.E.2d 337, quoting from *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849:

" 'On appeal we will consider only the evidence most favorable to the party against whom the Motion for Directed Verdict was made and all reasonable inferences from such evidence. (Citations omitted.)'

"The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to *be any evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations.* Specifically, our Supreme Court held in Hendrix v. Harbelis (1967), 248 Ind. 619, 623, 230 N.E.2d 315, 318, that:

" 'It is only where there is a *total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction * * * ' "

See also, *Smith* v. *Chesapeake and Ohio Railroad Co.* (1974), 160 Ind. App. 256, 311 N.E.2d 462.

The counterclaim alleges that in entering into the franchise agreement, Tacketts relied to their detriment on false representations by agents of Montgomery Ward concerning: (1) the potential sales volume and income level of the store, (2) the amount of time necessary to be devoted to the operation of the business and (3) the availability of representatives of Ward for the purpose of rendering advice and solving mutual problems arising in the course of the relationship.

Undisputed evidence reveals that Tackett paid a $1,000 deposit to the former owner of the business prior to entering into any negotiations with representatives of Montgomery Ward. It is therefore argued that Tackett did not rely on any of the alleged misrepresentations. However, the balance of the purchase price was not paid to the former owner until after negotiations with Ward's representatives. Further, Tackett testified that he relied upon the alleged misrepresentations in completing the transaction. We cannot conclude that the evidence is without conflict and susceptible of but one inference in favor of the moving party.

With respect to any alleged misrepresentation concerning the potential sales volume and income level of the store,

Ward contends that any such statements constituted a mere expression of opinion rather than a statement of past or existing fact and was therefore not actionable. The representation consisted of a statement that the store, which was making an approximate annual gross profit of $10,000 at the time of sale, had the potential of grossing approximately $20,000 annually in the very near future due to such factors as increased population. Even assuming *arguendo* that such statement constituted a mere expression of opinion, it does not follow as a matter of law that the statement could not be actionable.

It is true that as a general rule, mere expressions of opinion, honestly and dutifully given, do not constitute actionable fraud. *Mahlin* v. *Soshnick* (1958), 128 Ind. App. 342, 148 N.E.2d 852. However, this rule, by its very terms, hinges upon factual questions concerning the knowledge and motives of the person stating the opinion. Further, in *Automobile Underwriters, Inc.* v. *Rich* (1944), 222 Ind. 384, 53 N.E.2d 775, the court quoted as follows from *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 122 N.E. 662:

> "The mere fact that a statement takes the form of an expression of opinion is not always conclusive, for, as the question is now presented, it must be interpreted by the facts and surrounding circumstances shown by the complaint. The rule that actionable fraud cannot be based upon the mere expression of an opinion has been qualified until now an expression of an opinion may amount to fraud, where it is a mere contrivance of fraud, or if the person to whom it was expressed has justly relied on it and has been misled, or when it is coupled with other circumstances."

Montgomery Ward has advanced no other arguments relevant to the question of whether the trial court erred in overruling its motion for judgment on the evidence with respect to paragraph two of the counterclaim.

Montgomery Ward having failed to demonstrate reversible error in the trial proceedings, judgment is hereby affirmed.

222

Affirmed.

Robertson, C.J., and Lowdermilk, J., concur.