QUENTIN SHIPLEY *v.* CITY OF SOUTH BEND, INDIANA

[No. 3-275A29. Filed February 14, 1978.]

*Joseph V. Simeri, Kramer, Rowe, Sweeney, Butler, Simeri & Laderer,* of South Bend, for appellant.

*James H. Pankow, Jones, Obenchain, Johnson, Ford, Pankow and Lewis,* of South Bend, for appellee.

STATON, P.J.— Quentin Shipley was severely injured when he was shot by an employee of the South Bend Police Department during an altercation. Shipley was with a group of men in a car which was stopped by two police officers, John Floyd and William Molnar. Shipley sued the Civil City of South Bend (City) and alleged (1) that Floyd, acting in the scope of his employment assaulted and shot Quentin Shipley by the use of a hand gun; and (2) that the City was negligent in either hiring or training Floyd. The jury found for the City and against Shipley. Shipley appeals and presents two issues:

1. Is the City liable as a matter of law for assault and battery upon Quentin Shipley?

2. Is the City liable as a matter of law for negligence in hiring or in its training of Floyd?

We find no error, and we affirm.

### I.

### Assault and Battery

Shipley's first allegation of error is the product of several inter-related assumptions:

(a) Assuming that Floyd was acting in the scope of his employment, and

(b) Assuming that Shipley was acting in a legally-questionable manner, and

(c) Assuming that Floyd had cause to react to Shipley's actions, and

(d) Assuming that Shipley posed no deadly threat, and

(e) Assuming that Floyd deliberately used deadly force in responding to Shipley's actions, and

(f) Assuming that Floyd's deliberate use of deadly force in reacting to Shipley was unnecessary, therefore

(g) City is liable as a matter of law for Floyd's acts.

Before we examine Shipley's conclusion, we must test each of his assumptions.

In so testing the assumptions, we will not invade the province of the fact-finding body, the jury. Where the evidence is conflicting, or there is more than one inference to be ascribed to particular evidence, we will consider only the evidence or inference which supports the jury verdict. *See City of Indianapolis v. Schmid* (1968), 251 Ind. 147, 240 N.E.2d 66; *Wilson v. Jerry Miller, Inc.* (1973), 157 Ind. App. 135, 299 N.E.2d 177; *Vesey, Inc. v. Hillman China Co.* (1972), 151 Ind. App. 388, 280 N.E.2d 88; *Haynes v. Brown* (1949), 120 Ind. App. 184, 88 N.E.2d 795. Moreover, when the contended error is that the decision of the trial court is contrary to law, we may reverse *only* where the evidence is *without conflict* and can lead to but *one* conclusion, and the jury has reached the *opposite* conclusion. *Equitable Life Assurance Society of U.S. v. Short* (1975), 165 Ind. App. 338, 332 N.E.2d 273; *Hays v. Hartfield L-P Gas* (1974), 159 Ind. App. 297, 306 N.E.2d 373; *Ver Hulst v. Hoffman* (1972), 153 Ind. App. 64, 286 N.E.2d 214.

The evidence most favorable to the City reveals that on March 16, 1972, Shipley had been drinking with three companions. The car in which the four were riding had reached a speed of up to 60 miles per hour in a 25 mile per hour zone; it turned onto a side street and then into a muddy parking lot close to a tavern; in turning to enter the parking lot, the car was traveling at 20 to 25 miles per hour; the tires squealed; and the car spun 180 degrees in stopping. A police car in which officers Molnar and Floyd were riding followed the car into the parking lot, and the officers got out. Donald Zwierzynski, who had been driving the speeding car, accompanied Molnar to the squad car and got in. Shipley and Walter Zwierzynski approached Floyd; they insisted that they had been driving the car and that Donald could not be arrested. Floyd advised them to return to their car, but they refused. Shipley did not give any reason at trial as to why he did not do what Floyd, a uniformed officer, requested of him.

At this point, Don "bolted" from the police car and ran; he tried to grab Floyd; Floyd pushed Don away several times. Molnar was radioing for help. Molnar then got his nightstick and struck Don on his head from behind. Shipley rapidly walked toward Don in a

semi-circle fashion and came up behind Molnar. Floyd told Shipley to stop it or hold it; Floyd shot Shipley as Shipley was jumping at Molnar. Shipley and Molnar were 10 to 12 feet from Floyd when the shot was fired. Molnar then saw the other two men behind Floyd move toward Floyd; Molnar pulled his gun and told them to raise their hands. They did; one of them said, "That was crazy for him to try that. We wouldn't do anything like that."

These facts demonstrate that at least assumptions (a), (b), and (c) are reasonable. Furthermore, assumption (e) is supported by the facts, in that Floyd did draw his gun and shoot Shipley. However, assumptions (d) and (f) present questions of fact for the jury. The assumptions may only be validated if Floyd's actions were unreasonable under the circumstances. A jury heard the evidence; the assessment of that reasonableness was the duty of the jury. As we stated above, we will not substitute our conclusion for the conclusion of the jury unless there is no evidence of probative value to support the jury's conclusion. A jury's function is to weigh evidence and assess the credibility of witnesses. *Scruggs v. State* (1974), 161 Ind. App. 666, 317 N.E.2d 807; *Bonds v. State* (1973), 158 Ind. App. 579, 303 N.E.2d 686.

The circumstances surrounding the shooting were tense. But, Shipley asserts that he posed no deadly threat and that therefore Floyd's response to his [Shipley's] actions was excessive. Testimony was given at trial that Shipley was "right on [Molnar's] shoulder . . . ready to grab him or jump on him" when Floyd hollered "stop" or "hold it." Floyd testified that he thought the situation was very bad, that if Molnar should go down while he [Floyd] was being shoved by Don that it was possible that either his or Molnar's gun would be taken. Floyd's expressed fear was somewhat substantiated by the fact that Molnar testified that the remaining two men immediately raised their hands when so ordered and said, "We aren't going to do anything. That was crazy." We find that the evidence would support a reasonable inference that Shipley posed a threat which could have been deadly.

Furthermore, Floyd was 10 to 12 feet from Shipley and Molnar when Shipley moved toward Molnar. There was testimony that

Molnar had used a billy club earlier on Don. Shipley argues that this fact proves that Floyd's use of a gun was unnecessary. Considering the distance involved, we cannot say as a matter of law that a billy club or mace would have been effective. The jury heard Floyd testify that "there was no way" he "could have used mace or a nightstick with them that distance away," and apparently the jury believed him. We would note that Molnar also drew his gun during the fray; but when he did so, his commands were met with immediate compliance. Also, Floyd did not use his gun as a *first reaction*. The evidence showed that Don pushed him several times and that Floyd pushed Don away each time. It was only when Floyd feared that Officer Molnar was in danger, and in light of the entire situation, that Floyd drew his gun and shot.

Since assumptions (d) and (f) were not valid, considering the evidence and inferences drawn therefrom most favorable to the City, does it follow that the City is not liable for Floyd's acts? Yes; there is evidence that Floyd was acting within the scope of his employment as a police officer.[1] Furthermore, Shipley's conduct was thought by Floyd to be unlawful,[2] and he used that force which he belived to be necessary to stop Shipley. The jury's verdict that Floyd's acts did not constitute assault and battery should be affirmed. We emphasize that reasonableness is a factual determination for the jury. *We* conclude that the jury's verdict was not contrary to law.

## II.

### Negligence

Shipley's arguments, both at trial and on appeal, concerning City's negligent hiring and training of Floyd are immaterial. Once

---

1. Since it was his action of shooting Shipley during the scope of his employment that prompted the charge of assault and battery, it is pertinent to remember that a police officer is vested with a special protection in resisting force because of being a police officer and because of his duty to press forward and accomplish his objective. *See Durham v. State* (1927), 199 Ind. 567, 159 N.E. 145.

2. The fact that charges were not brought against Shipley is immaterial to this litigation on appeal. The jury was apprised that Shipley had not been charged with any crime. That fact was open for consideration along with the other evidence.

the jury determined that Floyd's actions in shooting Shipley did not constitute assault and battery, and that such actions were not unreasonable under the circumstances, negligence ceased to be an issue. Shipley was benefited at trial by the admission of much evidence relating to Floyd's hiring and training. Even though the jury heard the evidence, it found for City and against Shipley.

Although negligent hiring of an employe may serve as a basis for a cause of action in Indiana, it has no place where, as here, the employer has stipulated that the employe was acting within the scope of his employment. Floyd *was* acting within the scope of his employment as a police officer for the City. See *Tindall v. Enderle* (1974), 162 Ind. App. 524, 320 N.E.2d 764.

It is clear that if Floyd was acting within the scope of his employment and if the jury found his acts to be reasonable under the circumstances, negligence in hiring and training cannot be pertinent. For, even if the City had been negligent in hiring and training Floyd, he acted in the same manner as an officer who had been properly hired and trained; therefore, the negligent hiring and training argument loses its persuasive force. Moreover, negligence in hiring and training are factual enquiries. Shipley was permitted to present a great deal of evidence relating to Floyd's hiring. We will not reassess that evidence on appeal and substitute our conclusion for the conclusion of the jury.

We affirm.

Garrard, J. and Buchanan, J., (by designation), concur.

NOTE—Reported at 372 N.E.2d 490.