Robert Earl **HEMINGS**, Appellant
(Plaintiff Below),

v.

**REDFORD LOUNGE, INC.,** d/b/a Dick's
Harem House; Combo Investigation &
Security Services, Inc.; Michael Millikan: Marvin A. Haynes; and John
Woods, Appellees (Defendants Below).

No. 2–984A275.

Court of Appeals of Indiana,
Second District.

Dec. 9, 1985.

George Clyde Gray, Douglas N. Ryan, Richard D. Schreiber, Indianapolis, for appellant (plaintiff below).

Alvin E. Meyer, Stephen J. Peters, Indianapolis, for appellee (defendant below) Combo.

SHIELDS, Judge.

Plaintiff Robert Earl Hemings (Hemings) appeals trial court's grant of a motion to correct errors filed by the defendant Combo Investigation and Security Services, Inc. (Combo) setting aside a jury verdict for Hemings and against Combo in the amount of $150,000.

In the early morning hours of December 1, 1978, Hemings entered the Redford Lounge, Inc., d/b/a/ Dick's Harem House (Harem House), a lounge located in Indianapolis, Indiana. Upon the invitation of Michael Millikan (Millikan), owner of the lounge, Hemings stayed after the bar closed to celebrate Millikan's birthday with a group of Millikan's friends.

Marvin Haynes (Haynes) and Gary Cooper (Cooper), two security guards who were on duty prior to the bar's closing, also remained after hours to attend Millikan's party. Haynes and Cooper, employees of Combo, were assigned to the Harem House to provide security and to assist the lounge's personnel, in particular, Millikan, when requested. That evening, as usual, Haynes and Cooper were in full uniform and carried weapons.

At some point after the bar closed, several of the guests displayed their firearms. John Woods, a curious onlooker and a new acquaintance of security guard Haynes, asked Haynes' permission to see his gun. Haynes handed his loaded gun to Woods and warned him to be careful. Woods walked to the bar and showed the gun to Phil Nickels and to Jerry Monday, who had earlier shown his own gun to Woods. Woods then placed the gun in his pocket and walked to Hemings and Millikan. Woods pulled the gun from his pocket to show Millikan and, in so doing, the gun discharged in Hemings's direction. The bullet entered Hemings's head through his right cheek and exited through his left temple. Woods immediately dropped the weapon and shouted that the shooting was an accident.

On September 12, 1983, Hemings filed an eleven-count amended complaint alleging

negligence on the part of Harem House, Millikan, Combo, Woods, and Haynes.

Hemings proceeded against Combo on two counts:[1] First, that Haynes's individual negligence was imputed to his employer, Combo and secondly, that Combo was independently negligent in "provid[ing] the defendant, Haynes, with a .38 caliber revolver without instructing him or training him in the use of said firearm." Record at 138.

A jury trial commenced on May 15, 1984. Prior to trial, security guard Haynes was defaulted on the issue of liability upon his failure to appear and answer Hemings's complaint for damages against him individually.[2] The issue of damages only was to be submitted to the jury for its determination. At the close of Hemings's case-in-chief, the trial court entered judgment on the evidence in favor of defendants Harem House, Millikan and Combo on the issue of punitive damages only. Thus, the verdict forms submitted to the jury permitted an award of punitive damages against Haynes and Woods only. The jury returned the following verdicts:

"We, the jury, find for the Plaintiff and against the Defendants Combo Investigation & Security Services, Inc. and assess Plaintiff's compensatory damages in the sum of One Hundred and Fifty Thousand Dollars ($150,000.00). We further find for the Defendants Redford Lounge, Inc., d/b/a Dick's Harem House, Michael Millikan, John Woods, Marvin A. Haynes and against the Plaintiff.

"We, the jury, find for the Plaintiff and against the Defendants Marvin A. Haynes and John Woods on the issue of punitive damages and assess Plaintiff's

punitive damages in the sum of Ten Thousand Dollars ($10,000.00)."

Record at 247 and 249.

Upon receipt of the verdicts, the trial court *sua sponte* vacated the punitive damage award entered against Haynes and Woods. The court reasoned:

"[T]he jury did not award Plaintiff compensatory damages against the Defendants Marvin A. Haynes and John Woods, [and therefore the court] finds that the Verdict of the Jury awarding Plaintiff punitive damage against said defendants is erroneous and should be and it is hereby set aside."

Record at 254.

The jury's verdict in favor of Haynes was further modified by the trial court to reflect the default judgment previously entered against him. The trial court therefore ordered "that judgment shall be for the Plaintiff and against the Defendant, Marvin A. Haynes, for costs[.]" Record at 254.

On July 16, 1984, Combo filed its motion to correct errors which asserted, *inter alia,*

"[t]he jury verdicts and judgment entered by the Court is contrary to the law of respondeat superior because the verdict of the jury was for Defendant Haynes, who was Combo's purported employee or agent at the time of the occurrence, and was against Plaintiff. The Entry of Judgment and assessment of compensatory damages against Combo and for Plaintiff is contrary to law because, under the doctrine of respondeat superior, Combo can only be liable if Defendant Haynes was liable. Since the

---

**1.** A third and fourth count (Counts VII and VIII) were also asserted against Combo. These counts were dismissed prior to trial upon the defendants' motions.

**2.** The default judgment provides in relevant part:

"This action is now submitted to the Court for determination, and the Court being duly advised in the premises, now finds for the plaintiff and against the defendant in the above-entitled action, that the allegations of the plaintiff's Complaint are true; and that

the plaintiff is entitled to a judgment against the defendant, by default.

NOW THEREFORE, it is ORDERED ADJUDGED and DECREED by the Court that the plaintiff be awarded a judgment as to liability against the defendant, MARVIN A. HAYNES only and that the amount of damages be assessed for the plaintiff and against the defendant, MARVIN A. HAYNES, shall be determined by the jury hearing the trial of this case."

Record at 128–29.

verdict of the jury was for Defendant Haynes, Combo is entitled, as a matter of law, to judgment in its favor and against Plaintiff."

Record at 3–4.

On August 15, 1984, the trial court sustained Combo's motion to correct errors and set aside the jury verdict for compensatory damages against it in the amount of $150,000.

Hemings claims the trial court erred in vacating the judgment entered upon the jury verdict in his favor against Combo. He argues his asserted failure to prove his case against Haynes individually does not preclude a jury verdict against Combo because his action against Combo was also premised upon Combo's independent negligence in training Haynes and in entrusting him with a firearm.[3]

Combo argues the jury's verdict against it was contrary to law because, under the doctrine of respondeat superior, Combo could only be liable if defendant Haynes was found liable. The assumption underlying Combo's argument, and of the trial court's rationale for vacating its judgment upon the jury verdict against Combo,[4] is that Hemings' case against Combo proceeded *solely* upon the theory of vicarious liability.

■ The issue for our determination is whether Combo's alleged negligent training of security guard Haynes and its entrustment of a firearm to him was presented to the jury for its consideration through the final instructions.[5] It was. The instructions, read as whole, advised the jury a verdict against Combo could be returned under a theory of Combo's own negligence.

"Instructions are expositions to the jury by the trial court of the principles of law applicable in the particular case, which it is bound to apply in such case, and the purpose of which is to advise the jury of the particular question or questions they are to determine and to guide them in the application of the correct principles of law to the facts before them."

*Ring v. Ring,* 131 Ind.App. 623, 174 N.E.2d 58 (1961).

Several of the instructions presented the issue of Combo's independent negligence (separate from the issue of any imputed negligence on its part) to the jury. Hemings' instruction number 1 instructed the jury regarding the burden of proof imposed upon plaintiff Hemings in order to recover damages from *"any of the defendants for negligence"*. Record at 53 (emphasis added).[6] The general negligence charge did

---

**3.** Hemings does not claim error in the trial court's action vacating the judgment against Combo on the theory of respondeat superior. Therefore, the trial court's action is affirmed in that respect.

**4.** In pertinent part, the trial court's judgment states:

"In returning its verdict finding that no compensatory damages should be entered against the Defendant Marvin A. Haynes the jury determined that Plaintiff failed to carry the burden of proving his damages as to said Defendant. This determination was a finding for Marvin A. Haynes and against the Plaintiff, and established that Plaintiff had failed to sustain its burden of proving that damages were the proximate result of an act or omission of Defendant Marvin A. Haynes. That the Court erred in entering judgment in favor of Plaintiff and against Marvin A. Haynes for costs. That the Defendant Combo Investigation & Security Services, Inc. can only be liable if its alleged employee and agent, Defendant Marvin A. Haynes, was found to be

liable, and the jury was so instructed by the Court. That the jury failed to follow the instructions of the Court in awarding a verdict for the Plaintiff and against the Defendant Combo Investigation & Security Services, Inc. that said verdict is contrary to law, and that the Court erred in entering judgment for the Plaintiff and against the Defendant Combo Investigation & Security Services, Inc."
Record at 107–108.

**5.** Combo does not separately challenge the sufficiency of the evidence to support a jury verdict against it on a theory of negligent training and/or entrustment.

**6.** Plaintiff's Instruction number 1 in relevant part reads:

"In order to recover compensatory damages from any of the defendants for negligence, except the defendant Marvin A. Haynes, the plaintiff has the burden approving the following propositions:
*First Proposition:* That said defendant was negligent.

not denominate the claim of liability against any particular defendant as one of individual or imputed negligence. Consequently, under Hemings's instruction number 1, the question of each defendant's negligence, whether individual or imputed, was submitted to the jury.

Further, Combo's tendered instruction number 3, read to the jury, demonstrates Combo recognized that the action against it was not solely based on its alleged vicarious liability. Combo's instruction number 3 provides:

"If you find from a fair preponderance of the evidence that the defendant Combo Investigation & Security Services, Inc., exercised all the attention and care that would be considered reasonably necessary under all circumstances disclosed by the evidence, and the damages for which the plaintiff sues were unavoidable or resulted from acts or omissions which Combo Investigation & Security Services, Inc., could neither control nor avoid, the the plaintiff is not entitled to any recovery against Combo Investigation & Security Services, Inc. Under those circumstances, your verdict should be, accordingly, for that defendant, for, if there is no negligence on the part of that defendant, the plaintiff cannot recover damages against that defendant, even though you find that plaintiff has been damaged."

*Second Proposition:* That the plaintiff was injured and sustained damages.
*Third Proposition:* That the negligent act or omission of the defendant was a proximate cause of the injury and damages sustained by the plaintiff.
If you find from a consideration of all the evidence that these propositions have been proved then your verdict should be for the plaintiff and against the defendant or defendants, as the case may be, against whom these propositions have been proved. However, if you find from a consideration of all the evidence that any of these propositions have not been proved as to a defendant or defendants, your verdict should be for the defendant or defendants, as the case may be, against whom plaintiff has failed to sustain his burden of proof, except the defendant Marvin A. Haynes."

Record at 44. This instruction speaks in terms of Combo's own negligence and would not be supported by the evidence in a claim for relief based solely upon imputed negligence. Indeed, the case cited to the trial court by Combo in support of this instruction, *Adkins v. Elvard,* 155 Ind.App. 672, 676, 294 N.E.2d 160 (1973), involved a simple negligence suit.

Finally, instruction number 5, tendered by Harem House and read to the jury without objection, referred to the "negligent acts, if any, of Combo Investigation & Security Services, Inc. *or* it[s] employees." Record at 33 (emphasis added). This instruction advised the jury that if it determined Combo and its employees were "independent contractors of [Harem House], then [Harem House] is not liable for the negligent acts, if any, of Combo Investigation & Security Services, Inc. or its employees." *Id.*

■ Combo points to several instructions which it suggests "compels the conclusion that [Hemings's] case was submitted to the jury under theory of respondeat superior." Appellee's Brief at 16. Specifically, Combo argues its tendered instruction number 1 refers to Combo's liability solely in terms of its employer-employee relationship with Haynes.[7] Nonetheless, because the instruction does not restrict the issue to one of imputed liability, the reading of Combo's instruction number 1 to the jury did not limit Hemings's claim against Combo to one of vicarious liability.[8] Thus, the issue

Record at 53.

7. Combo also points to Hemings' tendered instruction number 13. However, that instruction was refused by the trial court.

8. That the action against Combo did not proceed solely upon the principle of respondeat superior is apparent from a review of the evidence as well. Plaintiff Hemings called Palmer Wilson, president of Combo, as its witness during trial. Questions relevant to the issue of Combo's alleged negligence in the training of Haynes and/or its entrustment of a firearm to him were directed to Wilson. For example, Wilson was asked:
"Q. Did Combo Investigation provide firearms training for all its employees?
A. Not all of them. We had secretaries working, etc., but we have provided extensive firearm training for employees.

of Combo's negligent training and/or entrustment was presented to the jury under

Q. For your security guards?
A. Yes.
Q. What did this training consist of?
A. Going to the Marion County Fish and Game where I give instructions myself. I'm a twenty year police retired officer. I am a NRA Police Firearms Instructor. And on about five or six occasions we went there and had the regular P.P.C. instructions for officers that carry weapons.
Q. And what is this P.P.C.?
A. Practical pistol course.

.    .    .    .    .

Q. Is there any training given besides training in actual shooting of a gun?
A. Carrying and so forth?
Q. Yes.
A. Yes, proper handling of a weapon is and was instructed on the firing range and that was incorporated into the everyday carrying of the weapon.

.    .    .    .    .

Q. Did you ever give Mr. Haynes any instructions not to give up possession of his weapon?
A. No, I don't think I've ever given any instructions to give up his weapon. When you say give up his weapon, can you be more specific?
Q. To hand his weapon to a customer in a bar?
A. How about handing his weapon to me?
Q. Did you ever give him—you say you have had training in firearms instruction?
A. Yes.

.    .    .    .    .

Q. Under what circumstances is it ever appropriate for someone to give up possession of their gun?
A. Well, if you were—if your superior officer asked for your weapon, you'd give him your weapon. Okay? You see, the question is a little ambiguous. If you could be more specific perhaps I could answer it better.
Q. Okay. Would it ever be appropriate while you were carrying your gun in public to give up possession of your weapon to somebody that you had recently met?
A. I think that would all depend on circumstances. If I were among friends at a gathering, or something, someone I trusted or—It'd be hard for me to answer. I know you're wanting me to answer that in regards to Marvin Haynes. I cannot answer it for him. I can only answer for what perhaps I would have done, or I would do in similar circumstances. If I were among friends, and someone asked to see my weapon, I may take it out and break it open and hand it to him and say, be careful, it's loaded. In fact, I've done this before among friends."
Record at 509–523.

the final instructions. Consequently, the trial court erred in setting aside its judg-

In response to an overruled objection by Combo that this line of questioning was beyond the scope of the issues submitted under the complaint, Hemings answered:
"Your Honor, we are trying to establish the procedures that this company had and whether they followed them with this particular employee, and whether or not the procedures were adequate for the safety of people in Mr. Hemings' position."
Record at 524. In addition, Wilson was extensively questioned regarding the rules and regulations governing the conduct of its employees.
Further, it is clear counsel for Hemings argued the theory of negligent training and/or entrustment in his summations to the jury. Addressing the jury, Hemings stated:
"[Palmer Wilson] has a lot of training in firearms. He knows how to instruct people in firearms. But did he instruct Marvin Haynes in the use of firearms? Did he give him a test? It would have been so easy to find out whether or not this man should have had a gun or not.

.    .    .    .    .

... [W]e allege in our complaint and we believe the facts have shown that the concurrent negligence of several parties were the proximate cause of the injuries to Mr. Bob Hemings. And you will hear instructions from the Judge telling you that you can find concurrent negligence causing the injuries to Mr. Hemings. We think that the negligence of the Combo Company, of the Harem House and of Mr. Millikan all came together on the night of December 1, 1978 and that they concurrently were negligent and that negligence was the cause of the injuries to our client....
Also, in our opening statement we told you the various theories that we have brought against the various defendants, and we will go through this briefly again.... We have alleged responsibility of the employer or agent, Haynes, in handing his gun to Woods and we allege that against Combo, Harem House and Mike Millikan.... We allege negligence in entrusting the gun to Haynes without proper training against Combo, and we believe the facts have shown that particular allegation of negligence."
Record at 809–812.
"What more could [Combo] do? They could verify before they give a dangerous weapon to a person that the person either has the proper prior training from someone else, or you take him out and you train him yourself before you give him a gun and you send him out to a place where people are drinking where that gun can hurt people. That's what more they could do. It's that simple. That's what Combo could have done[.]"
Record at 858.

ment upon the verdict adverse to Combo for the reason stated in its order granting Combo's motion to correct errors.

■ In the alternative, Combo maintains that even if the issue of Combo's independent negligence was submitted to the jury it can not be held liable. Combo argues the jury's compensatory damage verdict in favor of Haynes, Combo's employee, establishes the jury concluded Haynes's act or omissions were not the proximate cause of Hemings's injuries. Thus, Combo can not be held liable for the "negligent training" of Haynes when Haynes was absolved of committing an act for which he could be held liable.

In support of its contention, Combo cites *Shipley v. City of South Bend*, 175 Ind. App. 464, 372 N.E.2d 490 (1978), in which plaintiff Shipley appealed an adverse jury verdict in his action for personal injuries against the City of South Bend. The city, as the employer of the police officer who shot Shipley, was sued for the negligence of its employee under the doctrine of respondeat superior and for its negligence in hiring and training the officer. In affirming the judgment entered against plaintiff Shipley, this court stated:

"Shipley's arguments, both at trial and on appeal, concerning City's negligent hiring and training of Floyd are immaterial. Once the jury determined that Floyd's actions in shooting Shipley did not constitute assault and battery, and that such actions were not unreasonable under the circumstances, negligence ceased to be an issue.

. . . . .

It is clear that if Floyd was acting within the scope of his employment and if the jury found his acts to be reasonable under the circumstances, negligence in hiring and training cannot be pertinent. For, even if the City had been negligent in hiring and training Floyd, he acted in the same manner as an officer who had been properly hired and trained; therefore, the negligent hiring and training argument loses its persuasive force." 372 N.E.2d at 493. The jury's unequivocal determination that the officer did not commit an act for which he could be held liable disposed of the issue of the employer's negligence in hiring and training for the *Shipley* court. It is that very determination, however, which distinguishes *Shipley* from the instant case. Here, the jury's verdicts do not lead unerringly to the same conclusion.

Combo's argument is derived from Hemings's tendered instruction number 1.[9] That instruction, which was read to the jury submitted to the jury not only the issue of damages, but also the issue of whether Haynes's negligence was the proximate cause of Hemings's injuries. Combo reasons that a finding of compensatory damages requires negligence, proximate cause, and injury. Because instruction 1 told the jury Haynes was negligent, the failure of the jury to award compensatory damages means: 1) Hemings was not damaged; or 2) Haynes's negligence was not the proximate cause of Hemings's injuries. In either event, Combo argues, the jury's finding disposed of the issue of its individual negligence.

We disagree. The verdict assessing compensatory damages against Combo irrevo-

9. In relevant part, plaintiff's instruction number 1 reads:

"The plaintiff has been awarded a default judgment against the defendant Marvin A. Haynes, *only, on the issue of liability*. Therefore as to defendant Marvin A. Haynes the plaintiff has the burden of proving the following propositions:

*First Proposition:* That the plaintiff was sustained damages.

*Second Proposition:* That the negligent act or omission of the defendant Marvin A.

Haynes was a proximate cause of the injuries and damages sustained by the plaintiff.

If you find from a contention of all the evidence that these propositions have been proved then your verdict should be for the plaintiff and against the defendant Marvin A. Haynes. However, if you find from a consideration of all the evidence that either of these propositions have not been proved, then your verdicts should be for the defendant Marvin A. Haynes."

Record at 53 (emphasis added).

cably demonstrates the jury determined Hemings sustained compensable injuries, undercutting Combo's first contention. Also, the jury's contradictory verdicts as to Haynes demonstrates the jury did not irrevocably determine Haynes's negligence was not a proximate cause of Hemings's injuries.

In usual circumstances the jury's compensatory damage verdict in favor of Haynes would in fact demonstrate the jury concluded Haynes's unreasonable conduct was not the proximate cause of Hemings's injuries. However, these circumstances are not usual due to the jury's punitive damage verdict against Haynes. The jury was instructed it could return a verdict for Hemings for punitive damages *only* if it found Hemings was entitled to recover compensatory damages. Thus, the jury was implicitly instructed a punitive damage award required a finding of negligence, proximate cause and damage, the predicate for an award of compensatory damages. Thus, a verdict for Hemings for punitive damages against Haynes is an implicit finding of negligence, proximate cause and damage. Accordingly, the trial court was faced with irreconcilable contradictory verdicts. Neither the trial court nor this court has any basis for determining which verdict reflects the jury's true intent. However, we do observe at least one basis exists for the jury's obvious confusion.

The jury was instructed it only had to find Hemings's *entitlement* to compensatory damages rather than being instructed it had to first award compensatory damages. The trial court's instruction on damages read, in pertinent part, as follows:

"The plaintiff asks for compensatory damages from all of the defendants. In addition to compensatory damages the plaintiff asks that he be awarded punitive damages against the defendants Marvin A. Haynes and John Woods. If you find that the plaintiff is entitled to recover compensatory damages from either or both of the defendants Marvin A. Haynes and John Woods, you may then consider plaintiff's request for punitive damages against either or both of said defendants, depending on your award of compensatory damages against either or both defendants...."

Record at 241. The instruction is susceptible to the reasonable interpretations that punitive damages may be awarded upon a finding of entitlement to compensatory damages although no compensatory damages are, in fact, awarded, or indeed, that only compensatory or punitive damages may be awarded, not both. Thus, the jury verdict against Hemings and in favor of Haynes on the issue of compensatory damages does not compel the conclusion, as a logical necessity, that Hemings was not damaged or that Haynes's acts or omissions were not the proximate cause of Hemings's injuries. Therefore, *Shipley* is inapplicable.

■ Because the trial court was faced with inconsistent verdicts, the trial court did not err in vacating its judgment entered upon the jury's verdict against Combo. Rather, its error was in failing to further grant the new trial which is necessitated by the unquestionably confused and contradictory verdicts.

Judgment reversed, cause remanded, and the trial court instructed to grant a new trial as against defendant Combo only on Hemings's claim based upon Combo's alleged independent acts of negligence.

BUCHANAN, C.J., and SULLIVAN, J., concur.