Jeffrey KEMEZY, Appellant,
(Plaintiff Below)

v.

James PETERS, Individually and as a police officer of the City of Muncie, Bruce Qualls, Individually and as a police officer of the City of Muncie, and The City of Muncie, Appellees. (Defendants Below)

No. 49S00–9304–CQ–479.

Supreme Court of Indiana.

Oct. 25, 1993.

Michael K. Sutherlin, Ida Coleman Lamberti, Indianapolis, for appellant Jeffrey Kemezy.

David B. Roesner, Joseph G. Edwards, Shirey and Edwards, Muncie, for appellees Bruce Qualls, and the City of Muncie.

KRAHULIK, Justice.

This cause comes to us on the certification of three questions of state law from the United States District Court for the Southern District of Indiana, Indianapolis Division. This Court has jurisdiction to answer the certified questions pursuant to Indiana Rules of Appellate Procedure 15(O).

This case is currently postured with the District Court considering defendant Bruce Qualls' motion for summary judgment. The basis of the motion is Qualls' assertion of immunity under *Ind.Code Ann.* § 34–4–16.5–3(7) (West Supp.1992).

The evidence most favorable to the nonmoving party, Jeffrey Kemezy, the plaintiff, which has been submitted in connection with the motion for summary judgment is as follows: On March 31, 1989, James Peters, a Muncie police officer, was working at a bowling alley as a security guard. Kemezy and some companions were patrons that evening. During the course of the evening, Peters and Kemezy were engaged in a physical confrontation which culminated in Peters placing Kemezy in handcuffs and informing him that he

was under arrest. Peters then called the Muncie police department and requested that Kemezy be transported to the county jail.

Qualls and his partner were dispatched to transport Kemezy. When they arrived at the bowling alley, Kemezy was sitting on a bowling ball rack, handcuffed, dazed and complacent. Qualls pushed Kemezy into the bowling rack. In addition, outside, on the way to the patrol car, Qualls used his stun gun on Kemezy and struck him with either his fist or nightstick. Kemezy was then transported to the county jail.

Kemezy sued to recover for his alleged injuries, claiming, in part, that Qualls used excessive force. Qualls moved for summary judgment on the grounds that he was immune under Section 3(7). The District Court found that there was no controlling authority regarding whether an officer's intentionally-tortious use of excessive force in the course of an arrest or during a custodial detention is conduct entitled to immunity.[1] Accordingly, the District Court certified three questions to this Court:

(1) If a law enforcement officer commits the intentional tort of assault and battery by using excessive force in the course of or after an otherwise lawful arrest, can the officer's intentionally tortious conduct be "enforcement of a law" for the purposes of *Ind.Code* § 34–4–16.5–3(7)?

(2) If a law enforcement officer commits the intentional tort of assault and battery by using excessive force in the course of or after an otherwise lawful arrest, can the officer's intentionally-tortious conduct be within the "scope of the employee's employment" for purposes of *Ind.Code* § 34–4–16.5–3?

(3) If a law enforcement officer's conduct constituting the intentional tort of assault and battery (as described above) can be within the scope of the officer's employment, and if such conduct also can

be "enforcement of a law," can such conduct be "within the scope of the employee's employment" but yet *not* "enforcement of a law"?

Our recent decision in *Quakenbush v. Lackey* (1993), Ind., 622 N.E.2d 1284, addresses the ultimate issue underlying the certified questions. In *Quakenbush*, we held that the legislature intended that Section 3(7) confer immunity only when the plaintiff seeks recovery for the breach of a public duty, but provides no refuge to governmental entities or their employees for the breach of a private duty. Applying this principle to the facts in *Quakenbush*, we held that a law enforcement officer who was alleged to have negligently collided with a vehicle while on her way to the scene of a crime was not immune under Section 3(7).

■ Under Indiana law, law enforcement officers owe a private duty to refrain from using excessive force in the course of making arrests. *City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55, 60; *Peaches v. City of Evansville* (1979), 180 Ind. App. 465, 471, 389 N.E.2d 322, 327, *cert. denied*, 444 U.S. 1033, 100 S.Ct. 704, 62 L.Ed.2d 669 (1980); *Shipley v. City of South Bend* (1978), 175 Ind.App. 464, 468, 372 N.E.2d 490, 493. *See also Ind.Code Ann.* § 35–41–3–3 (West 1986). Accordingly, the use of excessive force is not conduct immunized by Section 3(7).

The certified questions also seek guidance about whether intentional conduct is outside the scope of a law enforcement officer's employment. This question arises because of this Court's modified opinion in *Seymour National Bank v. State* (1981), Ind., 428 N.E.2d 203, 204, *appeal dismissed* 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982), in which Justice Prentice wrote:

However, an employee's acts, although committed while engaged in the performance of his duty, might be so outra-

---

1. *Ind.Code* § 34–4–16.5–3 provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

geous as to be incompatible with the performance of the duty undertaken. In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. Such acts, whether intentional or willful and wanton, are simply beyond the scope of the employment.

. . . .

. . . With regard to those acts that are so incompatible with the performance of duty as to be outside the scope of the employment, there is no statutory grant of immunity either to the employee or to the governmental entity, which has no need for it, inasmuch as there is no basis for liability in it.

428 N.E.2d at 204 (footnote omitted). This language has properly been characterized as *dicta*. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 798; *Riggin v. Board of Trustees of Ball State Univ.* (1986), Ind.App., 489 N.E.2d 616, 631; *Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253, 1260.

▬▬▬ In Indiana, an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business." *Stropes v. Heritage House Childrens Ctr.* (1989), Ind., 547 N.E.2d 244, 247. Even the commission of an intentional criminal act may be considered as being within the scope of employment if "the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." *Gomez v. Adams* (1984), Ind.App., 462 N.E.2d 212 (security guard confiscated customer's identification; employer liable for conversion); *Tippecanoe Beverages v. S.A. El Aguila Brewing Co.*, 833 F.2d 633 (7th Cir.1987) (applying Indiana law) (employee converted cashier's check—employer liable for the conversion). The question of whether the tortious acts of an employee are within the scope of his employment is usually a question of fact, *Stropes*, 547 N.E.2d at 249, but may be determined as a matter of law. *Boyle v. Anderson Fire Fighters Ass'n* (1986), Ind. App., 497 N.E.2d 1073, 1078. However, the question of whether the governmental em-ployee was acting within the scope of his employment at the time of the incident (not the degree of culpability) remains the central focus of the inquiry. *Carver v. Crawford* (1990), Ind.App., 564 N.E.2d 330, 333. Even willful or wanton behavior does not necessarily remove one from the scope of his employment. *See Indiana Department of Correction v. Stagg* (1990), Ind. App., 556 N.E.2d 1338, 1343.

Of course, we make no determination on the merits of the cause of action which is now before the District Court. Whether plaintiff has a surviving cause of action, once the rule we have stated is applied, is to be determined by the District Court and not this Court.

The certified questions answered, this cause is remanded to the District Court for further proceedings.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., concurs, with separate opinion.

SHEPARD, Chief Justice, concurring.

While I did not join the decision today in *Quakenbush v. Lackey* (1993), Ind., 622 N.E.2d 1284, I regard it as settling the issue and will treat *Quakenbush* as stare decisis until such time, if any, as the Indiana General Assembly elects to modify the Indiana Tort Claims Act. Accordingly, I join in the decision in this case and the remaining cases today on authority of *Quakenbush*.